## WEEMS, Executor vs. BRYAN AND WIFE.

1. An executor is bound to include in his inventory of assets a debt due from himself to his testator.
2. Since the passage of the acts of 1848 and 1850, the husband is entitled, as income, to the money accruing during coverture from the hire of the wife's slaves and the rent of her land.

3. The husband, who is executor of his wife, may be compelled to settle his trusteeship of her separate estate in the Court of Probate; and on this settlement, he should state with that court a full account of all moneys or other property of the wife, received by him as *corpus* or *capital* of her estate, and not as *income*, and credit himself with all proper payments or disbursements, made by him in her behalf as trustee.

4. Under the act of 1850, the husband becomes tenant for the life of the wife of the rents and profits of her estate, and, like any other tenant for life, he is entitled to *emblements*, that is, the crop growing or matured, whether gathered or not, at the termination of the life estate.

APPEAL from the Court of Probate of Marengo.

The appellant, Samuel W. Weems, as executor of his wife, Penelope R., filed in the Court of Probate of Marengo his inventory of the estate of his deceased wife, containing only a list of a number of slaves. The appellees, as heirs at law and next of kin of Mrs. Weems, filed exceptions to this inventory, and made their averments, in proper form, that said executor had omitted from his inventory a large amount of property belonging to said estate, which ought to have been included therein. Among the items alleged to have been omitted, were the following:

| | |
|---|---|
| 27 Bales cotton, at 500 lbs. per bale, worth.....$2,000 | 00 |
| 1,000 Bushels of corn, at 75 cts. per bushel....... 750 | 00 |
| Oats and fodder........................... 150 | 00 |
| Notes and money received from Alex. Sledge, guardian of said Penelope R..................... 1,300 | 00 |
| 3 Mules, ($300) one horse or mare, ($100)........ 400 | 00 |
| Bed and furniture ($30,) household and kitchen furniture ($50,)............................... 80 | 00 |
| Farming utensils ($50,) cattle and hogs ($75,)...... 125 | 00 |

And appellant was required to appear, and show cause why these items should not be included in his inventory. The answer of the executor, for reasons therein assigned at length, which it is unnecessary here to set out, denied any obligation to include these items in his inventory; and the parties, upon issue joined, went to trial, by consent, before the judge of probate, without the intervention of a jury.

It appears from the record, that appellant and his wife were married in March, 1849; that he received, during that year, certain property belonging to his wife, and among other

things about $1,200, in cash and notes, from said Sledge, his wife's guardian, a portion of which notes were given for the hire of his wife's slaves for the year 1849; that, in the year 1850, he cultivated a plantation belonging to his wife, and about one hundred acres of rented land, with the slaves of his wife and one of his own; that the wife died in August, 1850, at which time a part of the crop of that year had been gathered, and the remainder was afterwards gathered, with the said slaves, and was disposed of by him. All the notes aforesaid of any value had been collected.

The wife made a will, on the 25th August, in which she appointed her husband her executor, and making him sole devisee and legatee of her land and slaves. The executor objected to including in his inventory the proceeds of the crop aforesaid, and the money received as aforesaid, on the ground that he was not bound to account for the same, except as trustee, and that the Court of Probate had not jurisdiction to compel him to do this. The objection was overruled, and the Court of Probate decreed, "that the said Samuel W. file a new, full and perfect inventory of said estate, and that he exhibit therein all the property, notes, money and effects of whatsoever description, belonging to his testatrix, which came to his hands as her guardian; that he exhibit therein a full account of all the rents and profits, which have accrued on the said property since the same came to his hands, during the lifetime of said testatrix; and that he exhibit a full return of the proceeds of the crop on hand, at the time of the death of said testatrix."

From this decree the executor appealed, agreeably to the statute in such cases, and now assigns the same for error.

A. R. MANNING, for appellant:

Plaintiff in error insists, first, that, under the two acts relating to the estates of married women, approved March 1st, 1848, and 13th of February, 1850, (the latter of which is declared in its title, as enacted to "alter and amend" the former,) the annual proceeds and profits belong to him. Such is clearly the effect of the third section of the latter act, which, in express terms, relates to the property held by the wife under the former act. And it declares, what this court

had previously affirmed, that the title to such property shall vest in the husband as trustee. See 15 Ala. 497.

But the statute further says, that the husband, "so long as he may continue trustee under the provisions of this act," shall have, possess, control and manage "all such separate estate, without liability to the wife, her heirs, executors or assigns," for the rents, proceeds, or profits thereof. Now, this act was passed for the very purpose (as every intelligent person in the State knows) of preventing the ruin and distress which the former act might produce, in allowing suits to be brought, and men to be made accountable for the administrations of the trust property, (and such administrations as that of husbands and fathers would be,) many years after the trusts had been assumed. Therefore, by express language, the third section refers to property held under the former act also.

But it was argued below, that statutes are not to have a retro-active operation, unless this be clearly intended; and that the words, "so long as he may continue such trustee under the provisions of this act," make this doubtful. But this evidently means, so long as the husband shall not be removed for unworthiness from the office of trustee, under the provisions of the next section of this act. Certainly, no rule of law requires the courts of the land to defeat the obvious intention of the Legislature by a casuistry, which, if used by one gentleman in the interpretations of his contract with another, would be regarded as unmanly equivocation.

It is not necessary to inquire whether the Legislature has power to deprive the wife of the profits of her property in her lifetime; and whether, to that extent, the third section of the latter act is operative. But certainly it has the power to say to whom the property, or the rents and profits of it, which the law itself gives to her, shall go at her death. And to say that the husband shall not be accountable for the rents and profits to the wife's executor, is to say he shall have them himself. This is a power that is exercised whenever the law of descents is changed, and which was exercised in the passage of the act converting estates tail made before the enactment, into estates in fee simple. See Clay's Digest, title "Conveyances."

And the act which makes the husband in effect a tenant for life, gives him a right to the crops remaining to be gathered also.

In the second place, the plaintiff in error insists, that the Probate Court cannot require him to account and settle his trust-administration of his wife's separate property in that court. If there be any balance due from him on that account, perhaps he may be required, as executor, to settle that. But the court here undertakes to make him account and settle with it for all that he received as husband, and to submit to its judgment as to the credits that shall be allowed him. It could not do this even if the trust were created by the will, over which the court had jurisdiction, much less where the trust existed independently of it, and before the death of the testatrix. See Elliott v. Mayfield, 3 Ala. 223.

PHELAN, J.—The general question involved in this case, is, what is an executor bound to include in his inventory? Our statute on this subject, in the oath which it requires an executor to take, brings him under an obligation to "return a true inventory of the goods, chattels, and credits" of the deceased, "so far as they may come to his knowledge." This inventory is returned under oath, and if an executor is sued for a *devastavit*, his inventory is *prima facie* evidence against him of assets to the extent of the amount therein stated. 1 Lomax on Ex'rs. 378; Ram on Assets, 145–8; Craig and wife v. McGehee et al., 16 Ala. 41.

That, under the head of credits, an executor would be bound to include in his inventory a debt due from himself to the testator, is clear from established doctrine that such a debt is assets. 2 Lomax Ex'rs. 230. This court has decided the question directly in several cases. Childress v. Childress, 3 Ala. 752; Purdom v. Tipton et al., 9 Ala. 914.

But the precise question arising in this case is, whether the husband, who is executor of his wife, is bound to include in his inventory moneys of the wife which he received during the coverture in the character of trustee as her separate property. It appears that Weems, the plaintiff in error, received from his wife's guardian a certain sum in money, and also notes, which were afterwards collected by him. A consider-

able portion of this accrued from the hire of her slaves and the rent of her land after the marriage, in 1849, and to this, as income, he was clearly entitled. But, it also appears, that some portion of this money was of the *corpus* or capital of her estate. Was he or not bound to include in his inventory under oath this sum, whatever it was?

The decision of this question will depend upon another, namely: whether the husband who is executor to his wife is compellable to settle his trusteeship of his wife's estate with the Probate Court?

As to the general doctrine that the Probate Court cannot take jurisdiction of that which is a special trust, even in the case of an executor, and where it is created by will, see the cases of Portis v. Creagh, 4 Por. 332; Leavens v. Butler, 8 Por. 380; Harrison v. Harrison, 9 Ala. 73; and Gerald and wife v. Bunkley, 16 Ala.

I felt for some time averse to bringing a strict trust like this, which, in the course of its existence and execution, would, in many cases, involve the rights of persons not subject to the jurisdiction of the Court of Probate, and who could not be called before it to have their rights adjudicated, into this court for any purpose. But as the jurisdiction is a convenient one, and where the settlement will involve the rights of creditors and distributees only, would be conclusive, I defer in this matter to the majority of the court, and hold, that a husband who is executor, is bound to settle his trusteeship of his wife's estate with the Probate Court.

This makes it necessary that he should state with that court a full account of all moneys or other property of the wife, received by him as *corpus* or *capital* of her estate, and not as *income*, and credit himself with all proper payments or disbursements made by him in her behalf as trustee, so that the balance struck may be a credit of the estate or a debt due by the estate, as the case may be.

The decision of the Probate Court to this effect was therefore proper.

What, we will next inquire, is the husband as executor bound to do in respect to the crops of 1850, or their proceeds? This will depend upon the proper construction of the statutes of this State, passed in 1848 and 1850, "securing to married

women their separate estates." (See acts of 1848 p. 79, and acts of 1850, p. 63.) By the first of these acts, all the property of every kind belonging to a woman at the time of her marriage, is declared to be trust property, to be held for her separate use. Although nothing is expressly said in this act making the husband trustee, the courts held him to be such. Key, adm'r. v. Vaughan and wife, 15 Ala. 497. By the act of 1850, that is expressly declared, which by the previous act was left to implication; and another provision in respect to the rights of the husband is enacted, which very materially affects the question we are now considering. That provision is in these words: "The same (that is the property) shall vest in the husband as the trustee of the wife; and the husband shall be authorized, so long as he may continue such trustee, under the provisions of this act, to have and possess and to control and manage all such separate estate, without liability to account to the wife, her heirs, executors, or assigns, for the rents, proceeds and profits thereof."

This provision was but a slight extension of the rights of the husband, as they had been long established by the courts of equity. 2 Roper on Husband and Wife, and authorities there cited.

Under this provision, there can be no doubt, but that the husband becomes tenant for the life of the wife (*per autre vie*) of the rents and profits of the wife's estate. The right "to have and possess, control and manage" her property during the coverture, without liability to account for rents and profits, makes him so. Like every other tenant for life, he is entitled to emblements, that is, the crop growing or matured, and whether gathered or not gathered, at the termination of the life estate. Ram on Assets, 188. Not being liable to account to any one for the crop that was grown in the year 1850, under this interpretation of the statute, it follows, as matter of course, that plaintiff in error was not bound to include in his inventory the crops of that year or their proceeds. The law makes them his own.

There seems to have been no question made below in regard to the mules, and other stock, the household furniture, &c. The appellant, in his answer, averred that these were purchased with his own money, which was not disproved.

The principles before stated will be sufficient to guide the Probate Court in the further progress of the case.

It follows, that so much of the decree of the Probate Court as requires the appellant to "exhibit, in a new inventory, a full account of all rents and profits which have accrued on the said property, since the same came to his hands, during the lifetime of said testatrix; and that he exhibit a full return of the proceeds of the crop on hand at the time of the death of said testatrix," must be reversed, and the cause is remanded, that the Probate Court may proceed in conformity with the views set forth in this opinion.