ROGERS vs. BOYD, Adm'r, &c.

[BILL IN EQUITY BY HUSBAND, AGAINST ADMINISTRATOR OF DECEASED WIFE, TO SUBJECT SEPARATE ESTATE TO PAYMENT OF DEBTS.]

1. *Husband not entitled to reimbursement out of wife's separate estate for debts paid for family supplies.*—If the husband, after the death of the wife, pays debts contracted for family supplies during coverture, which constitute a charge on the wife's separate estate under the act of 1850 and under the Code, he cannot come into equity to be reimbursed out of the *corpus* of such estate, or to be subrogated to the rights which the creditors might have had against it.

2. *Nor to have separate estate subjected to payment of outstanding debts.*—Whatever may be the rights of creditors to subject the wife's separate estate, after her death, to the payment of debts contracted during coverture for family supplies, the surviving husband has no equity to maintain a bill for the purpose of having the *corpus* of her estate subjected to the payment of such debts.

3. *Liability of separate estate for debts contracted during coverture in farming.* The *corpus* of the wife's separate estate cannot be charged during coverture, for debts contracted, with her consent, in carrying on farming operations with her slaves; nor can it be subjected by the husband, after her death, to the payment of such debts.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Simeon Rogers, the appellant, against the administrator of his deceased wife, alleging,

in substance, that he and his deceased wife were married, in Dallas county, Alabama, on the 27th January, 1851; that they lived together as husband and wife, until the 24th May, 1855, when his wife died, intestate, and without issue; that his wife, at the time of their said marriage, was possessed of a considerable personal estate, consisting principally of slaves, which she held as her separate estate under the act of 1848; that these slaves, with other hired hands, were worked and managed by him, up to the time of his wife's death, with her consent and approval, in carrying on farming operations; that the proceeds of the crops were applied to the payment of the rent for the land which was cultivated, and to the support and maintenance of the family; that many debts were contracted during the coverture for necessary articles of family supply, suitable to their condition in life, and for medical attendance on his wife while sick; that these debts were contracted with the assent of his wife, and on the credit of her separate estate, though he sometimes gave his note, as her trustee, for their amounts; that he has paid some of these debts since the death of his wife, and others are now outstanding against him; and that he is unable to pay these outstanding debts.' The prayer of the bill was, that as to the debts paid by the complainant since the death of his wife, he might be subrogated to the rights which the creditors would have had to enforce payment out of her separate estate, and might be reimbursed the amount so paid out by him; and that the separate property of the wife might be subjected to the payment of the outstanding debts.

The defendant demurred to the bill, for want of equity, for multifariousness, and for want of proper parties; and in passing on the demurrer, the chancellor delivered the following opinion:

CLARK, Ch.—"The equity of the bill presents for consideration three questions: 1. Can a husband, who, after the death of the wife, has paid debts for which the *corpus* of her separate estate under the statute could have been held liable, have such payments refunded to him out of

such *corpus?*   2. Can he sustain a bill to have the *corpus* of such estate subjected to outstanding debts after her death, for which he and such estate, had the wife been still living, would have been jointly liable?   3. Can the *corpus* of such estate be made liable for debts contracted, even with the consent of the wife, in carrying on a farm with the trust slaves during the existence of the marriage relation?

" 1. It is unnecessary to consider what would have been the rights and powers of the husband and wife under the statute of 1848, had not that of 1850 been enacted.   Hers are shown by the case of Hooper's Executor v. Smith and Wife, 23 Ala. 639.   The right of the wife to act with her property as a *feme sole*, and, consequently, to charge it with her debts *ad libitum*, was materially abridged by the act of 1850, which was held, in the case of Weems v. Bryan and Wife, 21 Ala. 302, 308, to retroact upon the estate of the wife, so as to entitle the husband to its income.   The effect of the legislation of 1850 was, while it allowed the wife the *corpus* of her estate as a separate estate, as the previous enactment had, it deprived her of the power to charge such *corpus*, except for articles of family supply, or to dispose of the same, except by consent of the husband, to whom it gave the entire rents, income and profits as his own, without the same being liable to his debts, or he being called to account to her, her heirs or representatives for such profits; thus disrobing the wife of her power to act with her property as a *feme sole*.   The rights and liabilities of the parties under the act of 1850 were not materially changed by the adoption of the Code.   Under the statute of 1850, the husband became tenant for the joint lives of himself and wife of the rents, income and profits of the wife's separate estate, unless deprived of them by his misconduct.   For what object were they conferred upon him?   Certainly not to be used in disregard of the just claims of the wife to be comfortably supported by him from these or other means. This is manifest from the fact, that if he becomes unfit to act as her trustee, he is to be removed, and she herself is then to have the control of the estate, its rents, issues

and profits, as a *feme sole*. The provision, that the estate of the wife 'shall be liable for articles of family supply, could not have been intended to relieve the husband from the discharge of his common-law obligation to support the family, but to give to the creditor an additional security for these articles, so that, under all circumstances, a comfortable support might be secured to the wife and children upon the faith of her property. It could not have been intended in any way to absolve him from the duties of a husband. He was still to be the head of the family, and still legally bound to provide for all its wants; therefore, when he has discharged a debt contracted for articles of family supply, he has but discharged his own debt, and cannot be subrogated to the rights of the creditor whose debt he has discharged. There can be no subrogation where the debt is a man's own.

"Besides, should a court of chancery undertake to charge the *corpus* of the separate estate, at the instance of the husband, for debts paid by him, it could not avoid calling him to account for the profits of the trust property, notwithstanding the statute declares that he shall not be required to account, because it must require any one who seeks its aid to do equity. The legislature could never have intended to inflict such a monstrous wrong on the wife, as to allow the husband to pocket the profits of her separate estate, and then be subrogated to the position of the creditor whose debt he had paid. The object of the statute is to secure to the wife the specific property. But how can this be effected, if the husband can be allowed to occupy the place of a creditor, and to be reimbursed out of the *corpus* of the property? He has only to let his accounts for family supplies remain unpaid as long as the creditor will consent, and, should the wife die, pay off the creditor, and then pounce down upon the *corpus* of the estate; which would no doubt, in many instances, result in leaving but little to distribute to her next of kin, while his pockets might be well lined from the use of moneys which ought, long before, to have gone to pay off such creditors. That such consequences might flow from allowing the husband to be reimbursed, very conclusively

shows, I think, that the complainant can have no equity to have such reimbursement. That a portion of the payments were for medical attention to the wife, can make no difference: the husband is bound to supply the wife with necessaries, and medical attention is a necessary.

" 2. The question, whether the complainant has any equity to have the *corpus* of the separate estate, after the death of the wife, subjected to the payment of outstanding debts for family supplies, must receive a similar decision. If the unpaid creditors have any claim to payment out of the *corpus* of the separate estate, (a question which I need not, and do not, decide,) they must themselves become actors. It would never do to allow a principal to have the aid of a court of chancery, to cast his own liability upon his surety; so it would never do to allow a husband, who is bound by law to support his family, to invoke the aid of a statute for the protection of creditors, to reach the estate of his deceased wife in *execution* of his own liability. In regard to such debts, husband and wife are not *equali jure*. They are *his* debts, and the estate can only be rendered liable at the instance of the creditor; consequently, he is not entitled either to exoneration or to contribution. The joint liability of the husband and wife to a suit at law was intended for the benefit of the creditor; but there it stopped. When the *corpus* of the wife's estate, after her death, has to be invaded to discharge a debt of this character, it is because the law wills it—not because it ought, in equity, to be so applied in exoneration of the husband; and the inauguration of such a policy by courts of chancery would not fail to remove whatever protection was intended by the legislature to be thrown around the property of the wife.

" 3. As the wife only has power under the statute to charge the *corpus* of her separate estate for articles of family supply, it follows that she has no right to charge it with the expenses of keeping up a farm. The statute of 1850, while it curtails her power under the act of 1848, must nevertheless be treated as an enabling statute. At common law, she could hold no such estate, nor make any contract which would bind her. But these statutes not

only create the estate, but that of 1850 declares the extent to which she can render it liable; namely, for articles of family supply.—Gibson v. Marquis and Wife, 29 Ala. 668; Davis and Wife v. Foy, 7 Sm. & Mar. 67; Selph v. Howland, 23 Miss. 264; Lillard v. Turner, 16 B. Monroe, 376; Johnston and Wife v. Jones, 12 B. Monroe, 326. For such farming expenses the husband is alone liable. He has a special estate, carved out of the wife's separate estate, which may last for life; and the law is, that the tenant for life must bear the current expenses attendant upon the use and enjoyment of the life estate. Such expenses can no more constitute a charge upon the *corpus* of the estate in remainder or reversion, than a physician's bill for attending upon a hired slave can be a charge against the owner.—See Jones v. Dawson, 19 Ala. 672; Tupper v. Fuller, 7 Rich. Eq. R. 170; U. S. Digest for 1855, p. 552, § 109; Caldecott v. Brown, 2 Hare, 144, and cases there cited; Maynard v. Johnston, 1 Hill's Ch. 109; Redding v. Hall, 1 Bibb, 541; Meeker v. Childress, Minor, 109. Such seems also to be the rule of the civil law, as applied to the usufructuary.—Cushing's Domat, § 997. Consequently, in the present case, neither the complainant nor any creditor can be allowed to charge the *corpus* of the separate estate, even by the consent or desire of the wife, with the expenses of the farming operations carried on by him during the coverture.

" As the bill lacks equity, in any phase in which it can be presented, it is unnecessary to consider the question of multifariousness."

The chancellor accordingly dismissed the bill, and his decree is now assigned as error.

WATTS, JUDGE & JACKSON, for the appellant.

D. S. TROY, *contra.*

STONE, J.—The present suit was instituted by the husband of the intestate, and, so far as the record discloses, the creditors do not desire to charge their debts upon the estate. Hence, we are not called upon to decide whether they have any, and if any, what rights in refer-

ence to this property. It will be time enough to consider *their* rights, when they invoke their consideration.

Neither are we required, by anything apparent upon this record, to decide how far a married woman, having a separate estate, created either by contract or by law, can by contract fasten a charge upon her separate estate, which courts of equity will enforce in favor of creditors. That subject was under discussion in the cases of Hoot v. Sorrelle, 11 Ala. 386; Baker v. Gregory, 28 Ala. 544; Daniels, Elgin & Co. v. Sprague and Wife, 31 Ala. 444; Gibson v. Marquis and Wife, 29 Ala. 668.

Nor does the complainant in his bill show that he was entitled to have the estate distributed. He alleges no ground for asking a distribution.—Code, § 1821.

Before the act of 1850, if a wife, having a separate estate, permitted her husband to have and use its rents, income and profits, the law presumed she made him a present of them, and he was not liable to account for them.—Roper v. Roper, 29 Ala. 247. The act of 1850 and the Code, by express terms, constituted the husband trustee of the wife's separate estate, and relieved him from liability to account for rents, income and profits. This provision, from the time of its enactment, fastened itself upon estates of married women held under the act of 1848.—Weems v. Bryan, 21 Ala. 302; Durden and Wife v. McWilliams & Smith, 31 Ala. 438; Pickens v. Oliver, 29 Ala. 528; Daniels, Elgin & Co. v. Sprague and Wife, 31 Ala. 444.

In Durden and Wife v. McWilliams & Smith, *supra*, we considered the question of the liability of the separate estates of married women for family supplies, under section 1987 of the Code.—See that case, and Ravesies and Wife v. Stoddart & Co., 32 Ala. The liability there declared, is not one created for the benefit of the husband, but for the benefit of the creditor, and possibly for her own support and protection.

With these explanatory remarks, we cordially adopt the arguments and conclusions of the chancellor.

Decree affirmed.