## PATTERSON vs. FLANAGAN.

[TROVER FOR CONVERSION OF SLAVE.]

1. *Husband's rights in wife's statutory separate estate.*—Under the Code, (§ 1983,) the husband has no right or power to mortgage, for his own individual debt, a slave belonging to the wife's statutory separate estate.

2. *Declarations explanatory of possession, and against interest.*—Declarations, made by a person who has the possession of a slave, to the effect that he holds under a will, and claims only a life-estate in the slave, are competent evidence on the principle of *res gestæ,* and as admissions against interest, without the production of the will.

3. *Relevancy of evidence, in trover, showing time of slave's death.*—In trover by the wife, after the death of the husband, for the conversion of a slave belonging to her statutory separate estate, which went into the defendant's possession under a mortgage executed by the husband without authority of law, and was accidentally drowned while thus in his possession, it is wholly immaterial whether the death of the slave occurred before or after the death of the husband; consequently, the exclusion of evidence bearing on that question is not a matter available on error.

APPEAL from the Circuit Court of Wilcox.

Tried before the Hon. NAT. COOK.

33

This action was brought by Mrs. Eliza E. Flanagan, against D. A. W. Patterson, and was commenced on the 21st September, 1858. The complaint, as amended, contained two counts; the first being in the usual form of a count in trover for the conversion of a slave, named Ellen, the property of the plaintiff; and the second claiming fifteen hundred dollars damages for the defendant's negligence and want of proper care and attention towards the slave, while in his possession under a contract of hiring. No pleas appear in the record. The slave in controversy, as appeared from the evidence adduced on the trial, had belonged to the plaintiff's paternal grandfather, who bequeathed her to the plaintiff's father for life, with remainder to the plaintiff. The plaintiff was married, in October, 1853, to James M. Flanagan, who died on the 11th May, 1857; and she owned and possessed said slave at the time of her marriage. The defendant obtained the possession of the slave, in the early part of the year 1857, under a mortgage from said Flanagan, to secure the re-payment of a sum of money lent by him to said Flanagan; and she was accidentally drowned, while thus in his possession, in attempting to walk across a foot-log over a creek, on returning with other negroes from the field in which they worked. The exact time of the slave's death—whether it occurred before or after the 11th May, 1857, when said Flanagan died—was not shown. The defendant's overseer, the only witness who testified to the circumstances attending her death, could not state the precise time at which it occurred; and the court excluded all the evidence offered by the defendant, for the purpose of showing that it occurred before the 11th May. This evidence consisted of the report of the slave's death in the town of Camden, which was about one mile distant from the defendant's plantation; the statement of a witness, who lived in Camden, that he had heard of the slave's death before Flanagan died; and a copy of a newspaper published in Camden, dated the 9th May, which contained an account of the slave's death on the 6th May. The defendant reserved several exceptions to the exclusion of this evidence.

On cross-examination of one Harwood, a witness for plaintiff, "defendant asked said witness, whether plaintiff's father had the possession of said slave in his lifetime, and claimed her as his own property; to which the witness answered affirmatively, and stated, in reply to other questions, that said slave was delivered to plaintiff by her father's administrator, about three months after his death; and that he died intestate. Plaintiff asked said witness, on the rebutting examination, how plaintiff's father claimed to own said slave; and the witness answered, that he claimed to own her for his life only. The defendant then asked the witness, whether the life-estate was so claimed by plaintiff's father under a deed or will; and he answered, that it was under a will. Thereupon, the defendant objected to the proof made by the witness, (that he only claimed a life-estate in the slave,) unless the will was produced. The court overruled the objection, and permitted the evidence to remain before the jury; and the defendant excepted."

The plaintiff proved, by several witnesses, declarations made, at different times, by the defendant and the plaintiff's deceased husband, as to the terms of the contract under which the defendant obtained the possession of the slave; the substance of these declarations being, that Flanagan mortgaged the slave to the defendant, to secure the re-payment of a sum of money lent to him by the defendant. She also read in evidence a portion of the defendant's answers to interrogatories filed to him under the statute, in another suit between them, (in which she sued for the conversion of another slave, named Frank,) in the following words: "The boy Frank was put in my possession by James M. Flanagan, in 1857, for the purpose of securing the payment of $750 paid by me for him; and the understanding between us was, that if the said money was not paid to me by some time in December, 1857, (the time not now remembered,) I was to sell Frank, and another negro put in my possession by said Flanagan, and pay myself the amount."

"After having charged the jury, without objection, as to the facts necessary to make said slave the separate estate of

the plaintiff under the Code of Alabama, the court further charged the jury as follows: That if they found from the evidence, under the previous charge of the court, that said slave was the separate estate of the plaintiff, held by her under the Code of Alabama, then her husband had no right to mortgage said slave, without her knowlege or assent, to secure a debt of his own; and that if he did so mortgage said slave to the defendant, and the defendant took possession of her under the mortgage, his possession so held would be unlawful as to the plaintiff; and that if the slave was drowned while so held by the defendant, the defendant would be liable to the plaintiff for her value, and the mortgage of the husband, if given as aforesaid, would not protect him."

The defendant excepted to this charge, and requested the court to give four charges in writing; the first and third of which the court gave, but refused the others; and the defendant excepted to their refusal. The charges so refused were in the following words:

"2. If the jury find, from the evidence, that the plaintiff was the wife of James M. Flanagan in the early part of the year 1857, and had a separate estate in the slave Ellen, held by her under the provisions of the Code of Alabama, as defined in the charge given by the court; and that said Flanagan placed said slaves in the possession of the defendant, under a contract that he was to have the use of the slaves for the interest on the money loaned by him to said Flanagan, until the then next December, and then was to have authority to sell them, if the money was not paid,— then the defendant's possession of the slave would be lawful up to December, 1857." ·

"4. If the jury believe, from the evidence, that the slave Ellen went into the defendant's possession, under a contract that she was to remain in his possession, as a security for money which James M. Flanagan owed him, until December, 1857, and then be sold by the defendant to pay the debt, unless sooner paid, and the hire of the slave in the meantime to discharge the interest on the debt; and that

the said slave died, without the fault of the defendant or his overseer, before the death of said James M. Flanagan, and before December, 1857, then they should find for the defendant."

The rulings of the court on the evidence, the charge given to the jury, and the refusal of the charges asked, are now assigned as error.

MORGAN & BYRD, for appellant.—The rents, income, and profits, of the wife's separate estate under the Code, belong to the husband, who alone has the right to sue for and recover them.—*Whitman v. Abernathy*, 33 Ala. 154 ; *Sessions v. Sessions*, 33 Ala. 522 ; *Pickens v. Oliver*, 29 Ala. 532. He is entitled to receive and receipt for any property belonging to his wife's separate estate ; has the right to invest the proceeds arising from a sale of it, or to use them for the benefit of the wife ; the right, also, "to manage and control" her property at his discretion, subject only to the revisory power of the chancellor ; and has a contingent right of survivorship, to the extent of one-half the personalty, which becomes absolute on the death of the wife intestate. With all these rights, interests, powers and duties, devolved upon him by statute, it would be a strange construction, which would confine his "management and control" of the property to the passive receipt of the rents and profits, without power to hire or pledge the property, and thereby make it produce income or profits. He alone can determine what is the most judicious mode in which to employ the property ; and the wife can only avoid his acts through the interposition of the chancellor, when her title to the property itself is thereby endangered.

D. W. BAINE, *contra.*—The principle on which the case of *Boaz v. Boaz* (36 Ala. 334) was decided, is equally decisive of this case. To give the husband power to mortgage or pledge the wife's separate property, without her assent, for his own individual debt, would enable him to defeat the object and purpose of the statute, as declared in that case.

STONE, J.—The controlling point in this record arises on the construction of section 1983 of the Code. That section reads as follows : " Property thus belonging to the wife," [her statutory separate estate,] " vests in the husband as her trustee, who has the right to manage and control the same, and is not required to account with the wife, her heirs, or legal representatives, for the rents, income, or profits thereof ; but such rents, income and profits, are not subject to the payment of the debts of the husband." It will be seen that this section of the Code vests the legal title of the wife's separate estate in her husband, gives him the right to manage and control the same, and relieves him from all accountability for its income and profits to the wife, her heirs, or legal representatives. The provisions of the statute, conferring on the husband the right of control, and exempting him from liability to account, go no further than this.

Under the act of 1850, which substantially conforms to the section of the Code above copied, this court, in the case of *Weems v. Bryan*, (21 Ala. 308,) considering the rights of a surviving husband in the statutory separate estate of his deceased wife, said : " Under this provision, there can be no doubt but that the husband becomes tenant for the life of the wife, *(per autre vie,)* of the rents and profits of the wife's estate. The right ' to have and possess, control and manage' her property during the coverture, without liability to account, makes him so. Like every other tenant for life, he is entitled to emblements," &c.

In the case of *Bennett v. Bennett*, (34 Ala. 56,) we withheld express approbation of the opinion in *Weems v. Bryan*, *(supra,)* but adhered to it as a rule of property.

So, in *Pickens v. Oliver*, (29 Ala. 532,) we followed out the principle announced in *Weems v. Bryan* ; and, although the question was not directly presented, we said that, in the rents, income and profits of the wife's statutory separate estate, the husband, during the continuance of the trust, is entitled to the entire interest, and the wife to no part of it. The same principle had been substantially

affirmed in the older decision at the same term of *Andrews v. Huckabee*, 30 Ala. 143. And in *Whitman v. Abernathy*, (33 Ala. 160,) we followed this principle, and ruled, that the wife could not recover from the husband's vendee the hires of slaves belonging to her separate estate, which hires accrued during the continuance of the trusteeship.—See, also, *Rogers v. Boyd*, 33 Ala. 175 ; *Smyth v. Oliver*, 31 Ala. 39 ; *Durden v. McWilliams*, ib. 438 ; *Cowles v. Morgan*, 34 Ala. 535 ; *Alexander v. Saulsbury*, January term, 1861.

It will be observed that, in most of these cases, the right of the husband to the rents, income and profits, is predicated on the assumed and unqualified ground, that he was *not liable to account therefor.* Such was the statement of the principle in *Weems v. Bryan*, and the later cases followed its lead. The language of the Code is, that the husband " is not required to account *with the wife, her heirs, or legal representatives.*" There may be a distinction between a general exemption from liability to account, and a qualified exemption from liability to account *with the wife, her heirs, and legal representatives.* Whether a husband, holding in his hands the income and profits of the wife's separate estate, can be made to account for such income and profits to creditors of the wife, is a question which has not been considered in this court, and we do not now propose to consider it. Nor will we inquire whether any peculiar significance attaches to the form of the expression, " is not required to account *with* the wife, her heirs, or legal representatives." These questions will be disposed of when they arise.

In the later case of *Boaz v. Boaz*, (36 Ala. 334,) we think we furnished a much more satisfactory solution of the question under discussion, than is contained in the general language of the opinion in *Weems v. Bryan*, followed, as that language was without question, in the later cases. We there said : " The legislature, in making the exemption from liability for the husband's debts, certainly did not look alone to his benefit. It would be a strange anomaly in legislation, if the husband has been clothed with a right to

the entire income of the wife's property, exempt from liability to his debts, for no purpose beyond the bestowment of a peculiar boon upon him. But furthermore, the peculiar language of the statute is indicative of an ulterior purpose. It first declares, that the property is the wife's separate estate. It then vests it in the husband *as a trustee*, and proceeds to declare, not that the income belongs to the husband, but that he shall not be required to account for it. The husband, therefore, holds the property as trustee, and is entitled to the income, merely because he is not required to account for it as trustee. It is a fair inference from these provisions, that the husband is not vested with a title in his own right, for any space of time, to the wife's separate estate ; that the law has permitted him to receive the income, with the purpose that he might, as the head of the family, have the means of maintaining that family, and has made it free from liability to debts, in order that his misfortunes and thriftlessness should not prevent the accomplishment of the purpose."

In promotion of this line of argument, we may well inquire, if the legislature intended to confer on the husband the unqualified property in the income and profits during the joint lives of himself and wife, why did they not express that intention in plain and unambiguous language ? Why, when simple words would so much better subserve their purpose, employ the circumlocution, that the husband, as trustee, should have the right to manage and control the property, without liability to account with the wife, her heirs, and legal representatives, for the rents, income, and profits ? If the intention was to make an absolute gift, why restrict the language which exempted him from liability to account ? These questions we ask, without intending to answer them.

It is not our intention to weaken or overturn any decision heretofore made, bearing on section 1983 of the Code. Those decisions have doubtless been acted on, and have become rules of property. But we are not inclined to enlarge the husband's interest in the wife's separate estate.

Patterson v. Flanagan.

Following out the principles declared in the case of *Boaz v. Boaz, (supra,)* it is manifest that a mortgage or pledge of the wife's separate property, by the individual contract of the husband, and for his individual debts, is not within the pale of the authority which the woman's law confers on the husband and trustee. The intention and policy of the law, as was shown by the result of the case of *Boaz v. Boaz*, are, that the wife shall receive a support from the labor and income of the separate estate. Hence, Mr. Boaz, by withdrawing his protection and supervision from the home of his family, was declared to have forfeited his right to continue in the exercise of the trust; and, for that cause alone, he was removed.

So, in this case, Mr. Flanagan, by mortgaging the slave, for his own debt, has assumed an ownership and control of the property, not compatible with the purposes of the trust. This cannot, with any propriety, be classed as an act of management or control of the property, with a view to the maintenance of the family. It is, so far as we can discover, a placing of the property beyond the reach of the family; not as a means of securing to the wife the enjoyment of her property, but as a means of raising money for the benefit of the husband.

If we were to hold, that the statute confers on the husband *the right* to so dispose of the separate estate of the wife, it would follow, that the wife could not complain of this rightful exercise of authority; and would not such principle arm the husband with power to defeat the very object of the statute, as declared by itself, and by this court in the cases of *Smyth v. Oliver*, and *Boaz v. Boaz?* We will not further elaborate this view.

That the husband may hire or lease out the separate property of the wife, as a general rule, we will not deny. Such hiring or leasing may be one, and, in the circumstances, the most advantageous mode of maintaining the family from the income of the separate estate. This power might be abused; and for the correction of that abuse, the interference of the chancellor may be invoked,—with what

success, or show of right, we will not now anticipate.

It results from what we have said, that the circuit court did not err in giving the first affirmative charge, and in refusing the second and fourth charges asked. The second affirmative charge was not excepted to, and we need not consider it.

[2.] The court did not err in admitting in evidence the declarations of Mrs. Flanagan's father, made while he was in possession of the slaves, and explanatory of his possession ; also, in disparagement of his title. That he claimed to hold them under a will, or supposed will, cannot vary their legality as *res-gestæ* declarations.—Shep. Dig. 591, *et seq.; Thomas v. Degraffenreid*, 17 Ala. 602.

[3.] The testimony offered, tending to show that the slave Ellen died anterior to the death of Mr. Flanagan, was wholly immaterial, and was rightly excluded on that ground, if no other.

Judgment affirmed.