## BIBB *vs.* POPE.

[BILL IN EQUITY, BY MARRIED WOMAN, TO ENJOIN SALE OF STATUTORY SEPARATE ESTATE, UNDER MORTGAGE EXECUTED BY HER AND HUSBAND, TO SECURE PAYMENT OF HUSBAND'S DEBT.

1. *Statutory separate estate ; mortgage of, can not be entered into by husband and wife, for the payment of husband's debts.*—The husband and wife can not enter into a mortgage of her statutory separate estate, for the pur-

pose of subjecting it to sale, for the payment of the husband's debt; and if they do, a court of chancery will not permit the mortgage to be enforced, by sale of the wife's separate estate, if she objects.

APPEAL from Chancery Court of Montgomery.
Heard before the Hon. N. W. COCKE.

THE opinion contains the facts of this cause.

J. T. HOLTZCLAW, for appellant.—1. The sole question raised by the pleadings and proof in this case below, was, whether a married woman can mortgage her seperate statutory estate, by joining in the conveyance with her husband, and having it attested by two witnesses, as prescribed by Code, § 2373.

2. That she can convey absolutely, by complying with requirements of section 2373, is supported by an unbroken chain of decisions from 21st to 39th Alabama, and while the precise question raised in this record, has never been adjudicated in this State, in *Warfield v. Ravisies & Wife,* 38 Ala. 519, the argument and reasoning of the court clearly imply that she has such right; while in Mississippi, under a similar statute, it is held, " that the wife may deal with her husband or trustee in regard to her separate estate; may go surety for her husband, and mortgage her estate to secure his debt."—*James v. Fish et al.,* 9 S. & M. 144.

3. In a case identical with the one at bar, the supreme court of Mississippi decide that the wife can mortgage her separate statutory estate to secure individual debt of the husband.—*Sessions and Wife v. Wingate,* 30 Miss. 441.

4. Reasoning, upon legal principles, the right to convey absolutely, includes the right to convey any life estate; if she can convey absolutely with or without consideration, upon what principle can she be restricted in conveying a conditional interest, which may in time develop into the full estate upon the happening, or not, of a particular event ?

5. It is difficult to conceive how the question of purchaser, with notice, can arise between vendor and vendee; yet, upon this idea hinges the argument of the chancellor

in decreeing on this case. That reasoning is made upon a supposed state of facts, and is not borne out by the facts in the case.

6. There is no case made by the bill, further than to raise the naked question of the right of the wife to convey ; this was the question of the case, the one evaded by the chancellor, and every other one, however remotely connected, that could have been imagined, was passed upon.

7. There is no charge of fraud or unfair dealing in the transaction ; the money of Bibb was obtained upon the security afforded by the mortgage, and by that alone, and was loaned in good faith. The fact that usury was obtained does not change the transaction, and could only equitably scale Bibb's demand to the extent of the usury, after allowing legal interest.

8. How was Bibb chargeable with the necessities of Pope, or could he know what value the money was to him ; for all that appears in the bill, it might have been used in speculation and doubled in the hands of Pope, and equity would decree it to be his wife's.

9. The bill no where charges Bibb with knowledge that it was the separate estate of Mrs. Pope, but the pleadings and proof show that she voluntarily executed the mortgage in the manner provided by statute, with a full knowledge of what she was doing, and without setting up any claims as to its being her separte estate. The fact of her not being on the bill is nothing ; it would have simply been void, even if made for the purpose of improving the separate estate, but would not have affected the deed.—30 Miss. 441.

10. As to the right to charge separate law estate.—See *Greer v. Perryman*, 39 Ala. 133 ; 17 Johnson, 548.

11. The act of February, 1867, and now incorporated in the Code, § 1629, was evidently enacted upon the idea, that joining in the husband's warranty would bind the separate estate of the wife, which idea was based upon the adjudications by this court, affecting the estates of married women.

WATTS & TROY, on same side.—1. The wife, as to her

separate property (held under a deed or will) has the right in equity, to mortgage or charge it by her contracts, either express or implied.—See 2 Vol. Story's Equity, § 1399.

The ground on which Story places this right to *mortgage or charge* it, is that she has the absolute power of disposing of the whole, and *a fortiori*, she may dispose of a part. See, also, § 1400, 2 Story, Eq. Jur., and note 1 on page 842, and note 1 on page 844; the note to *dictum*, § 1400, containing the opinion of Lord Brougham.

2. The right of disposing of the *whole by sale, when the mode* prescribed by the statute has been complied with, is decided in *Ravisies v. Warfield*, 38 Ala. It would seem to follow as a legal and logical sequence, that the right to mortgage, was included in the power *to sell* the whole, in every case where the *mode* of conveyance prescribed by the statute has been complied with.

And so it has been held in Mississippi under a statute, in this respect precisely, like the Alabama statute.—See the authorities in the first brief.

3. All the authorities cited by the learned counsel for the appellee, holding that a power to sell does not include the power to mortgage, were cases of the *execution of mere powers vested in trustees*, and not one case cited by him showed that when the party mortgaging owned the property—having the general power of disposition or alienation incident to the ownership of property—could not mortgage it.

4. The husband, under the Alabama statute, is entitled to the rents, income and profits of the wife's statutory separate estate, and the declaration in the statute that these rents, income and profits shall not be subject to his debts, means that by law no process may be levied thereon. But he may use the same in payment of his debts, or he may mortgage the same, and his mortgage would convey the same, subject to the right of the wife to have him displaced as her trustee.

5. The Alabama statute does not require that the proceeds of the sale of the wife's statutory separate estate, shall or must be invested in other property. Section 2374

13a

declares that the proceeds may be used by the husband, in such manner as is most beneficial to the wife.

Is not the husband to determine what is, or is not, most beneficial. If he abuse this trust thus vested in him, she is not without remedy. But can the purchaser of the property, who pays to the husband the proceeds of such sale, be held responsible for the exercise of the husband's discretion? The purchaser certainly cannot be so held responsible. Section 1588 of Revised Code expressly declares that the purchaser shall not be held responsible for the application of the proceeds of such sale.

6. The right to will her separate estate, held under the law, is expressly given. This shows that the general right of disposition or alienation incident to ownership, was not intended to be restricted further than the express terms of the statute.

7. As to the wife's right (when joining with her husband) to mortgage her statutory separate estate, in other States, in addition to the authorities cited in first brief, see *Eaton v. Narm*, 47 Maine, 132; *Savier v. Hequera*, 15 California, 483; Sytles' Appeal, 35 Penn. State Rep. 131; *Heath v. Vancott*, 9 Wis. 516; *Stone v. Montgomery*, 35 Miss. 83.

8. The mortgage by the husband and wife conveyed the rents, income and profits of the wife's estate to Bibb. By express terms of the statute, the husband is not accountable to her, or to heirs or representatives, for them. This conveyance, if made by the husband alone, would give to Bibb the right to the rents, income and profits of the separate estate, until the husband is displaced, by decree of a competent court as trustee, on appropriate proceedings instituted for that purpose.

The bill filed in this case does not seek to have her husband displaced as trustee; does not show any fraud or collusion between the husband and Bibb. So long as the husband remains the trustee, he is entitled to the rents, income and profits. They are his property; the right to dispose of them in any way he pleases, is an incident to ownership, and he can exercise this right in any way and for any purpose he pleases, unless restrained by the law. This

statute does not in the least restrain his right of disposition over these rents, income and profits. So long as he continues trustee, this property in him continues, and continues in his alienee, until the husband is displaced as trustee. Not until then do the rents, income and profits become under the control of the wife.

9. The decree of the chancellor in this case, deprives Bibb of this clear right derived from the husband, and yet the husband continues as the wife's trustee.

CHILTON & THORINGTON, *contra.*—1. The simple question in this case is, whether a married woman, having a separate estate under the Code, can, by joining in a mortgage of such real estate with her husband, with power of sale, to secure the payment of a bill of exchange drawn by the husband on, and accepted by himself, for $12,400, thus charge her estate with the payment of such debt. We insist that she can not thus charge it for the following reasons :

1. The statute being the creature of the law, and the power over it by husband and wife being conferred by the law, subject to certain restrictions, these restrictions must be observed and can not be evaded. They are limitations upon the power of alienation, and the statute nowhere gives the power to mortgage.— *Warfield v. Ravisies and Wife* 38 Ala. 518.

2. The Code declares that the property of the wife, or any part thereof, *may be sold* by the husband and wife, and conveyed by them jointly, by instrument in writing attested by two witnesses.—See Code, § 2373. This is all the power conferred. It evidently contemplates a *sale*—a sale for the wife's benefit—not a mortgage for the *husband's* debt.

3. The next section of the Code, § 2374, provides, that the proceeds of *such sale* is the separate estate of the wife, and may be re-invested in other property, which is also the *separate property* of the wife. Now, this court will see, that the *corpus*, or its proceeds, must be preserved as her separate estate.

4. The husband is made the trustee of the wife of such property ; trustee for what purpose ? To apply it to the

payment of his debts? To waste and squander it? Certainly not, but as a trustee to watch over, and take care. He is well paid for his care, in being the recipient of the rents and profits; but even these are not liable for his debts. See Code, § 3372.

Taking these statutes and sections all together as constituting a body of laws upon this subject, and construing them in view of the power which the husband has over the wife, it is perfectly manifest that a sale, and not a mortgage is the conveyance contemplated, and that if this court should reverse this case, there will be no protection to married women, and the object of the law will be frustrated. See the case of *Warfield v. Ravisies and Wife*, 38 Ala. Rep. 518, and the authorities cited on page 523, which clearly sustain my view of this case.

The decree of the chancellor is, however, self-sustaining on the hypothesis he puts the case. But the power given "to sell," does not give the right to mortgage.—*Cummings v. Wilkinson*, 1 Larned Ch. Rep. 17; 1 Hill, 111; 3 Hill, 361; 1 Sugden on Powers, top page, 266–7; Story on Agency, § 78, page 74; *Tullet v. Armstrong*, 18 Eng. Ch. R. 376, 392. See as to limitation of alienation by husband and wife, *Stone v. Toombs*, 2 Met. (Ky.) 520, and the various authorities cited by appellant's counsel in that case; Cord on Legal Rights of Married Women, § 402; also, pages, (bottom) 624 to 631, inclusive.

The Mississippi statute gives general power of disposition, but is wholly unlike our statute, which shows the sale must be *absolute* to obtain proceeds. "A radical change has been made in the pre-existing law upon the subject of married women's estates by our statute. The change was made to protect this description of property, generally conveyed to a woman to *secure* her against want, from the operation of those influences (undue, fraudulent, or otherwise) which might be brought to bear upon her, to induce her to sell, dispose of, or convey it."—Cord on the Legal and Equitable Rights of Married Women, page 226, note; *Stewart v. Wilder*, 17 B. Monroe, 59.

PETERS, J.—On the 5th April, 1866, Augustus Pope,

the husband of Mrs. Evelyn Pope, appellee, borrowed of J. DuBose Bibb, appellant, the sum of $10,000, for which he gave his bill of exchange for $12,400, payable eight months after date, to the order of said Bibb. On the same day said Augustus Pope executed and delivered to said Bibb a certain conveyance in writing, in the form of a mortgage, whereby he conveyed to Bibb certain lands therein named, which belonged to himself, and a lot, numbered 57, in the city of Montgomery, in this State, which was the separate property of his wife, said Evelyn Pope. This mortgage contained a power to sell the lands conveyed therein, in the event that Pope failed to pay said bill of exchange, at its maturity. Mrs. Pope united with her husband in this mortgage, and the same is attested by two witnesses. At the maturity of the bill of exchange Pope failed to pay it, and Bibb then proceeded to advertise a sale of the mortgaged property, for the purpose of selling the same, for payment of his debt against said Augustus Pope, and included in said advertisement the lot belonging to Mrs. Pope, as her separate estate. Thereupon, Mrs. Pope, by her next friend, filed her bill in the chancery court of Montgomery county aforesaid, against said Bibb, and said Augustus Pope, her husband, for the purpose of enjoining and preventing said proposed sale of her said lot, No. 57. An injunction was granted her, and upon the final hearing it was made perpetual. The bill was filed on on the 23d day of January, 1867. It appears from the bill and proofs, that B. N. Wilkerson and his wife Elizabeth, gave the lot in controversy to Mrs. Pope, by deed, on the 10th day of August, 1860, to have and to hold the same to her, " her heirs and assigns, to her use and behalf forever." Upon the hearing the chancellor sustained the bill and perpetually enjoined Bibb from selling said lot, No. 57, as the separate estate of Mrs. Pope, under said mortgage, and taxed Bibb with the costs. From this decree Bibb appeals to this court.

The only question discussed at the bar was, whether Mrs. Pope was bound by said mortgage, and whether her statutory separate estate was liable to be sold under it, to pay her husband's debt, due by said bill of exchange to said

Bibb.   This question has not heretofore been settled by
any decision of this court.   In discussing it, the court can
not close its eyes to the fact that the wife is under the
power of the husband, and often acts, when he chooses to
invoke her aid, under an influence but little less potent
than actual duress.   Nor can it ignore the further fact, that
the law, under the common-law system, has treated the
wife, in some respects, as the servant of the husband, sub-
ject to his control even to chastisement by stripes " in case
of any gross misbehavior."—1 Blac. Com. 444, 445 ; 2 Kent
Com. 181.   She has been placed very much upon the foot-
ing of a child during its minority.   She has had no voice
in any one of the great departments of the government ;
no voice at the ballot box ; no voice on the jury.   She rarely
deals with the husband, or where he is interested, upon
equal terms with him.   And the protection both of her
person and her property has been, in a very great degree,
a matter of fashion and charity, rather than of law and
justice, until within the last twenty years.   She is peaceful,
timid and confiding, and in many matters of business,
is utterly ignorant of the consequences of her own acts.
Whether this be the result of choice or training, or the
necessities of society, its effects are the same.   It very
much cripples her ability to guard her rights of property
from invasion, and her estate from destruction by losses
which do not originate from her own faults, but often
against her feeble and hampered remonstrance.   These
circumstances have rendered her, of late years, the peculiar
object of legislative solicitude and protection.   The law-
making wisdom of the State has seen and felt her need of
greater protection than the common-law afforded, and has
devised, under various title, " laws for the protection of the
rights of married women."   Thus far, such laws have re-
commended themselves so strongly to public favor, that, to
secure them from repeal and fluctuation, they have been,
in many instances, incorporated into the fundamental law
of the State.   And we think it safe to say that, the declared
and manifest purpose of such enactments furnishes a just
rule for their interpretation.   They were made to avoid the
known insecurity to which the estates of married women

are exposed, from the improvidence or maladministration of the husband, who necessarily exercises so large a control over the wife, and through her, over her estate.

The Code of 1852, which is copied into the Revised Code of this State, and which latter Code, with certain modifications, is now the law that must govern the judgment of this tribunal, declares that " all the property of the wife, held by her previous to the marriage, or which she may become entitled to after the marriage, *in any manner*, is the separate estate of the wife, *and is not subject to the payment of the debts of her husband.*"   Another section of the same law vests in the husband, as the trustee of the wife, her separate estate, and gives him the control and disposition of the " *rents, income and profits thereof*, but such rents, income and profits *are not subject to the payment of the debts of the husband.*"—Revised Code, §§ 2371, 2372 ; *Patterson* v. *Flanagan*, 37 Ala. 513.

The bill in this case is filed by the wife, Mrs. Pope, to prevent the sale of her separate estate for the payment of the debt of her husband, Augustus Pope—a thing which the statute declares shall not be done.   If, then, this sale is permitted, the whole purpose of the law, so far as it protects the wife's separate estate, will be defeated ; for when the principle is once admitted that this may be done, methods and ways will soon be discovered to carry it into unlimited effect.   This can not be allowed.   It would be a violation of law by indirection ; and what it is illegal to do directly, is also illegal if done indirectly.   For it is the *thing* that is forbidden, and not the manner of doing it.   In whatever form, then, whether of law or in equity, this is attempted, the power to do it is denied by the express words of the statute, by the whole scope of its intent, and by the character of the evil sought to be remedied.

It was very earnestly contended at the bar, by the learned counsel for the appellant, that the wife had the power to sell, and, therefore, she had the power to mortgage her estate for the payment of the husband's debts, because the power to sell was the greater power, and, as the greater always contains the less, the right to mortgage, because it was a *form* of sale, followed the power to sell, as a neces-

sary consequence. *Omne major continet in se minus.* This is an admitted rule of logic and also of law. But it is not strictly applicable in this case. The distinction is lost sight of, that the wife can neither sell nor mortgage her separate estate under the statute, for the payment of the husband's debts. This would defeat the purpose and the words of the act itself. It would tear away from the wife its whole protective force, whenever the husband chose to avail himself of her means. She is much under the influence of the affections. It is her weakness " to love not wisely but too well," and shrewd and unscrupulous men know full well how to take advantage of this weakness, often to her beggary and ruin. And it is this that the law interposes to prevent. In *Warfield v. Ravisies and Wife,* this court has said that, " Property held by the wife, either under the acts of 1850, or under the Code, cannot be said to be the separate estate of the wife, *in its broadest sense.*"—38 Ala. 623. Yet, it is in this sense, that the appellant presses his rights upon the court. The sale that the wife and her husband are permitted to make, without the aid of chancery, is only such a sale as is mentioned in the act—that is, a sale for the purpose of re-investing the proceeds in other property, which is also the separate estate of the wife, or for the support of the family.

A mortgage within these limits would be almost a futile act; and such is not the mortgage here insisted on.—Revised Code, §§ 2373, 2374, 2376; *Alexander v. Saulsberry,* 37 Ala. 375; *Warfield v. Ravisies and Wife,* 38 Ala. 518.

It is further urged against the validity of this mortgage, that it is a fraud upon Mrs. Pope, and void for that reason. Her husband is her trustee; the mortgage could not have been accomplished without his concurrence; that its execution jeopardized the trust estate for the benefit of the trustee, and not for her benefit; and that if it is enforced it will utterly ruin the trust estate, solely for the trustee's individual profit. Bibb knew this, or was bound to know it, and cannot be excused if he did not. And to permit him to take advantage of it would be to aid him and the trustee to profit by their own injurious acts. And although the transaction might not be strictly and technically a

fraud, it has the same effect. And upon the same principle, that the greater contains the less, it may be said with equal truth, that things equal to the same thing are equal to each other. So that whatever has the effect of a fraud, in the management of a trust, must be treated as a fraud. Revised Code, section 2372; *Johnson v. Thweatt*, 18 Ala. 741; *Boney v. Hollingsworth*, 23 Ala. 690; *Trippe v. Trippe*, 29 Ala. 637; *Charles v. DuBose*, 29 Ala. 367; 1 Story Eq. 322 and 323.

The decree of the chancellor in the court below being in conformity with these views, must be, and is hereby affirmed. It is further ordered that the appellant, J. DuBose Bibb, and his securities on his appeal bond, pay the costs.