PORTIS VS CREAGH, ex'or.

*As to proceedings in the Orphans' Court, on the settle-ment and distribution of estates.*
*As to joinder of parties, in writs of error.*

1. In proceedings before the Orphans' Court, on the settlement of estates, such entries should be made, as to show—at whose instance settlements are ordered—what representatives ap-pear before the Court, and who claim under the estate, and are actors in the cause.

2. Cases may present themselves before the Orphans' Court, where that Court might properly pass upon the account of the executor, and yet have no power to order distribution.

3. Thus, where a testator, by last will, vested the management of the estate in his wife, and authorised certain property to be divided, under her direction—giving to some heirs, slaves, to some, money, and making the share of others depend upon a certain event—it was held, under the facts, that the Or-phans' Court, had no power to order a distribution.

4. One Executor, complaining of the judgment or decree of the Orphans' Court, rendered against several executors jointly, can not prosecute a writ of error, without using the name of all; which he may do, without the consent of the others.

5. A writ of error to a decree or judgment against three execu-tors, prosecuted only in the name of one, should be dismiss-ed on the mere act of the Court itself.

In error to the Circuit Court of Clarke County.

This case originated in proceedings, carried on in the Orphans' Court of Clarke County, and removed thence, to the Circuit Court, by Garrard W. Creagh, an executor, against whom, with others, a decree of the Orphans' Court had been rendered. From the record, the following facts appeared:

On the seventh day of November, eighteen hundred and twenty-five, the will of Ira Portis, deceased, was admitted to probate, in the County Court of Clarke County.   The will is in these words—

"In the name of God.   I will, ordain, and constitute, this my last will and testament, in words and figures as follow.   My will and wish is, that my estate be managed by my wife and three of my neighbor friends—such as the County Court may appoint, that will act; and that they be well paid for their trouble.   I want them, and authorise them by this will, to sell such part of my estate, as they may think best for the estate—either lands, negroes or other property; or hire out negroes, or rent out lands.

"My children I want to be learned some occupation.—If any of them seems to learn well, and it is best for them to study a profession, set them to do so: if others seem disposed to till the soil, set them to do so—as I wish all my children to have as good an education as their occupations may require.

"When the first of them shall come of age, or marry, I want those commissioners, whom I clothe with all the authority of executors, to value the two thirds of my estate, after leaving one third of all real and personal property, for my wife, into as many lots or apportionments as there are children of mine, and give them, as they come of age, or marry, each one, his or her proportionable share—observing to give each one such negroes or land as my wife shall think best—as I want children and negroes, all accommodated, if it can be done; and I want the most

obedient children to have the most obedient negroes, or such as their mother thinks will suit best.

"If my children should, any of them, be obstinate —will not obey their mother, I want them bound to some man, as will not let them stroll about in mischief. If either of my daughters marry a man of smartness and care, I want their share given them in full; but if the reverse, to a scamp, gambler, drunkard, and so forth, make their share very short, and that of the sorriest sort, or none, if he is likely to spend what he gets.

"If my wife die before any or all of my children get their shares, I want her third thrown in and divided; and if any have drawn their share of the two thirds given them, with the others, which have not drawn their share of the one third reserved to her, for life, and then share the whole estate, or each, one part, as before divided.—As I do not mean by this will, that each child shall have his equal share of all the land and all the negroes—as it will be best for some of them to have land, and some negroes, or perhaps some money—so each gets his share in value, as before directed.

"I will name, for commissioners or executors, if they continue in the neighborhood, and will act, Edward Kenedy, Robert Lee, and William H. Jones.— If they, or either of them do not act, I want the County Court to appoint such as will act."

This will was signed and witnessed in such manner as required to pass real estate, and letters testamentary were granted to Mary Portis, as executrix; Robert Lee and William H. Jones, as executors, and G. W. Creagh, to act as executor with them, in con-

formity with the power of appointment given by the will.

The estate of the testator, as appeared by the inventories in the record, amounted to near fifteen thousand dollars, and consisted of slaves and other personal property, and lands.

Inventories of the estate, and an account sales of a portion of the same were returned by William H. Jones, Robert Lee, and G. W. Creagh, after which no further action on the said estate, or in relation thereto, was had in the said County Court, until the fourth day of November, eighteen hundred and thirty-three, when the following order was made:

"Ordered by the Court, that a citation issue to G. W. Creagh, Mary Portis, (now Mary Gordon,) and Robert Lee, executors of the last will and testament of Ira Portis, deceased, that they be and appear before the honorable the Orphans' Court of Clark county, to shew cause, if any they have, why said estate should not be settled according to law.

" Ordered, that notice be given by publication in the Mobile Commercial Register and Patriot, for six months successively, to all persons interested in the estate of Ira Portis, deceased, that the executors of said estate will, on the first Monday in January next, present to the Judge of the County Court of Clark county, State of Alabama, at Macon, their accounts and vouchers, for allowance and final settlement, at which time all persons interested will attend, if they think proper."

On the first Monday in January, eighteen hundred and thirty-four, it was ordered by the Court, that the joint report of G. W. Creagh, one of the executors of

the estate of Ira Portis, deceased, and William F. Jones, administrator of the estate of William H. Jones, deceased, was ordered to be received, recorded and filed. As their accounts are not necessary to the understanding of the case, it is not deemed necessary to further advert to them.

The final settlement of the estate was continued or postponed, from time to time, until the first Monday of June, eighteen hundred and thirty-four, when the following entry appeared in the record of the cause :

" On this day, the executors of Ira Portis appeared, in conformity to public notice, which notice had been agreeably to law, and presented their account against the estate of Ira Portis, for final settlement."

Who the executors were, who appeared, could not be ascertained, with certainty, from the record. The citation was ordered against G. W. Creagh, Mary Portis, now Mary Gordon, and Robert Lee: and it may be fairly inferred from subsequent parts of the record, that they were present. No suggestion of the death of William H. Jones, other than the rendition of the account by his administrator, appeared; nor was any suggestion made of the intermarriage or coverture of Mary Portis, though it may be inferred that she was then known by the name of Gordon— most probably a widow a second time. Nor did it in any manner appear, other than by the rendition of judgments in their favor, what individuals interested in the estate, were before the Court. The record then proceeded to state :

" The executors presented their accounts against the estate of Ira Portis, up to this date. This ac-

count was objected to, in this shape, and the executors were ordered to present their accounts against the estate up to the time the first heirs married or came of age; and against the estate and individual heirs after that time. The executors then presented their accounts against the estate up to January, eighteen hundred and twenty-eight, for the sum of two thousand nine hundred and twenty dollars and seventy-nine cents, which was allowed, and passed by the Court.

" The executors then presented their accounts against the individual heirs, for board, tuition and clothing, properly proven and authenticated, up to this date; which the Court rejected. The Court decided, that the executors had no right, after the first heir married, or came of age, to charge either the estate, or the heirs individually, for either board, tuition or clothing; and that if the executors had paid their accounts for either, they must look to the heirs or their guardians, in another Court, for the reason that, at that time, the plantation was broken up, and the property partly distributed among the heirs.

" It also appeared, on the examination of all the accounts, claims, and vouchers, which the Court admitted, against the estate, and the amount which the executors had received for said estate, from all sources, that the sum of seven thousand nine hundred and ninety-five dollars and sixty-three cents, still remained in their hands unaccounted for; and the sum of two hundred and ninety-six dollars and sixty-five cents, theretofore retained as due said estate, from the estate of William H. Jones, a former executor— amounting, in all, to the sum of eight thousand two hundred and ninety-two dollars and twenty-eight.

cents; which said sum was ordered and decreed to be distributed among the heirs, in the following manner:

| | |
|---|---|
| To Mary Portis, former widow, | $191 48¼ |
| " Samuel M'Call, in right of his wife, | 50 92¾ |
| " Joseph P. Portis, - - - - | 50 92¾ |
| " Solomon W. Portis, - - - | 152 17¼ |
| " Samuel G. Portis, - - - - | 352 82¾ |
| " Norflet Goodwin, in right of his wife, | 646 49¾ |
| " David Y. Portis, - - - - | 794 89¾ |
| " John W. Portis, - - - | 794 89¾ |
| " Edmund M. Portis, - - - | 794 89¾ |
| " Benjamin P. Portis, - - - | 794 89¾ |
| " Darius M. Portis, - - - - | 794 89¾ |
| | $5,420 32¾ |

Which said several sums it was ordered, should be paid, by the said executors, to each heir respectively, for which execution might issue; except in the cases of John, David, Edmund, Benjamin and Darius—in which cases, if executions were required before the first day of January, eighteen hundred and thirty-five, the sum of one hundred and sixty-one dollars should be deducted, in each case; and after the first day of January, eighteen hundred and thirty-five, execution might issue for the full amount.

The record contained the *remititurs* of several of those persons, for portions of the sums decreed to them; and proceeded with a statement of particular slaves, and cattle, having been delivered to the widow and many of the heirs before named; and then proceeded with—

"It also appeared to the satisfaction of the Court, that the following negroes," (specifying twelve, and

their respective real value, (" were still remaining in the hands of the executors; and thereupon, the executors produced the lots in which they had divided the negroes, when the first heir married; and the Court ordered that a lot be drawn for each heir;—whereupon David Y. Portis drew Lyden," and others, valued at six hundred and twenty-five dollars and the others were divided in the same manner, among several of the children. And, in relation to the negroes drawn by David Y. Portis, the Court "ordered and decreed, that the executors deliver the said negroes to David Y. Portis, after the first day of January, eighteen hundred and thirty-five."—And a similar order was made, in relation to the negroes drawn by the other children.

The Court then proceeded to make an order, in relation to the payment of monies, which should subsequently be received by the executors, of a sufficient sum to each heir, to equalise the respective value of the slaves drawn by them.

It also appeared in the accounts as stated, that the sum of seven hundred and forty-two dollars would be due, for negro hire, on the first of January, eighteen hundred and thirty-five, which formed a part of the sum ordered to be distributed.

The record of the acts of the County Court was concluded by the following order.

" It appearing to the satisfaction of the Court, that the executors have fully accounted for all the funds which have come into their hands up to this date; and Robert Lee, one of the executors, having come into Court, and tendered his resignation, as executor of said estate,—It is ordered and decreed, that Rob-

ert Lee be henceforth discharged from any farther liability as executor of said estate."

On the twenty-first of July, eighteen hundred and thirty-four, G. W. Creagh sued out his writ of error, to the Circuit Court, to reverse the proceedings of the County Court, so far as related to the judgment of the Court in favor of David Y. Portis; and on the return of the record into that Court, assigned for error—

1st. That the Court below erred, in not allowing and passing the accounts of the executors of Ira Portis, up to the day of settlement.

2ndly. In not allowing the account of the executors, for board, tuition and clothing, when presented, properly proven and authenticated, against the individual heirs; and in refusing to pass the account of David Y. Portis, who was one of the individual heirs.

3dly. In giving judgment against the executors, for the hire of negroes, for the year eighteen hundred and thirty-four, which appears by the record, not to be due until the first of January, eighteen hundred and thirty-five.

4thly. In ordering a division of the remaining negroes, by lottery.

5thly. In ordering that the executors should deliver to the said David Y. Portis, the negroes drawn by him.

6thly. In ordering the sum of one hundred and sixty one dollars should be deducted from the judgment rendered in favor of said Portis, if execution on the same, was required, before the first day of January, eighteen hundred and thirty-five.

On these assignments of error, there was a join-der in the Circuit Court, which, at the fall term, eighteen hundred and thirty-four, reversed the judg-ment of the County Court, and remanded the cause for further proceedings. Portis now re-moves that judgment to this Court, by writ of error; and assigns for causes of error, that the Circuit Court reversed the judgment of the County Court.

*Bagby*, for the plaintiff in error.
*Porter*, contra.

GOLDTHWAITE, J.—It is apparent, that this record presents some striking irregularities, in rela-tion to the statement of the names of the contesting parties—the several interests of those claiming a right to contest the accounts of the executors; and, it is much to be regretted, that a Court, possessing so extensive a jurisdiction, and of such direct and press-ing importance to the community, as the Orphans' Court of the several Counties, should be so little go-verned, by any settled rules of practice and proceed-ings.

In the present case, it should have been distinctly shewn, at whose instance this settlement was requir-ed to be made—what executors appeared before the Court—who claimed to be interested in the will, and in what shares or proportions—and which, if any, were the actors against the executors. It would be prudent and correct in all cases, where the County Court assumes jurrisdiction of any cause, of a testa-mentary character, to cause all its suitors to pro-pound their allegations and interests, in writing—so

that an appellate tribunal might. see, at a glance, who are the suitors, before the Court below; and in what manner the action of the Court is had on their respective claims and rights.    If this was done, much litigation, expense and vexation, would be saved to all persons concerned.

Although the conclusion to which this Court has been forced, by the state of the record in this case, is one which would relieve them from the consideration of the merits of this cause; yet, as the case may undergo the further action of the Courts, they will proceed to express their opinion on the same.

The third, fourth and fifth assignments of error, although seeking to reverse the particular judgments thereby complained of, involve the general inquiry, if the County Court, in the case presented by the record, had jurisdiction to render any decree, distributing the estate of the testator, and to award execution, in favor of those claiming under the will.

The judge of the County Court seems to have entertained the opinion, that he had jurisdiction, as well to award distribution to the several children, as to proceed to the settlement of the accounts of the executors.    Now, many cases may, and in fact do exist, in which he would have the right to pass on the accounts, and yet not to make distribution; and there may, no doubt, be some cases, where a distribution might be made under a will.    The act of eighteen hundred and thirty,* would seem to authorise such a conclusion.

*Aik, Dig. 252

A reference to the terms of the will of the testator, in this case, must satisfy every one, that it confers on the widow and executors, important duties

PORTIS *vs* CREAGH, ex'or.

and confidential trusts—that it vests with them, implicit confidence and great discretionary powers :—the estate is to be managed by the wife—the negroes divided, as she directs—lands and slaves to be given to one—slaves and money to another, when, in a certain event, others may be cut off, in the expressive language of the testator, "very short." It can not be, that it was ever intended that such trusts as these should be overturned, and the estate distributed as if the father had made no will.

The Court are unanimously of opinion, that the County Court has no jurisdiction to proceed to a distribution, in this cause ; and would have affirmed the judgment of the Circuit Court, reversing the proceedings of the County Court, if irregularities had not intervened, which would render this course improper.

The County Court rendered a judgment against the executors of the will of Ira Portis.—There were then, before that Court, Mary Gordon, executrix, G. W. Creagh and Robert Lee, executors ; and the effect of the judgment there rendered, is a joint one, against all three.—Creagh had a right to sue out a writ of error in the name of all—even without their consent ; and could not take a writ of error, in his own name, or if so done, it would give the Court no jurisdiction ; and the writ of error would be dismissed. Such is the settled practice of this Court, recognised by numerous decisions.—*Caller vs Brittain,*[*] *Eastland vs Jones et al*[†]—*Adams vs Robinson*[‡]—*Swift vs Hill.*[§]

And, the Court is bound to dismiss a cause improperly brought, on its own mere motion, as it can have jurisdiction alone by writ of error.—*Jamison vs Colburn.*[¶]

[*] Minor's R 27.
[†] ib. 275.
[‡] ib. 285.
[§] 1 Porter's Rep. 277.
[¶] 1 Stewart and Porter 253, and cases there cited.

The Circuit Court had, therefore, no jurisdiction to proceed and render any judgment of affirmance, or reversal; but should have dismissed the writ of error.

This Court, therefore, reverses the judgment of the Circuit Court; and, proceeding to render such judgment as that Court should have rendered, directs that the writ of error to the County Court be quashed, for the non-joinder of the other parties to the judgment of the County Court.

In the case of *Goodwin vs Creagh*, depending on the same facts, a like judgment is rendered.