## THOMAS vs. STERNS.

[BILL IN EQUITY BY JUDGMENT CREDITOR AGAINST PERSONAL REPRESENTATIVE OF DEBTOR'S ADMINISTRATOR.]

1. *Conclusiveness of judgment.*—A judgment against the administrator *de bonis non* of a deceased debtor, is no evidence of the debt as against the personal representative of the deceased administrator in chief.

2. *When creditor's bill lies.*—A creditor, having an unproductive judgment against the administrator *de bonis non* of his deceased debtor, cannot come into equity, to reach assets of the debtor's estate in the hands of the personal representative of the deceased administrator in chief, against whom a decree has been previously rendered by the orphans' court in favor of the debtor's distributees, which decree has been paid.

3. *Validity of decree of orphans' court.*—A decree of the orphans' court, under the act of 1845, (Session Acts 1844–5, p. 167,) directing the " administra-

tor of J. T., who was the administrator of W. T.," to pay to the respective distributees of W. T.'s estate the amount found due to them, is not void for uncertainty, but is amendable by other parts of the record, where the name of the administrator is stated, and will be considered amended accordingly.

APPEAL from the Chancery Court at Claiborne. Heard before the Hon. WADE KEYES.

THE bill in this case was filed by the appellants, on the 21st September, 1849, and sought to reach assets in the hands of the defendant, Henry F. Sterns, as the administrator of William Thomas, deceased, who was the administrator in chief of Joseph Thomas, deceased, and to have such assets subjected to the satisfaction of several judgments at law, which the complainants had obtained against George Stonum, as the administrator *de bonis non* of said Joseph Thomas. Its material allegations were, that said Joseph Thomas died in 1841, having in his hands moneys belonging to the complainants, which he had previously collected for them; that William Thomas administered on his estate, from 1841 to 1844, and received a large amount of assets belonging to said estate, which were duly returned in his inventory to the orphans' court; that complainants' claims were duly presented to said administrator, within eighteen months after his appointment and qualification, and he repeatedly promised to pay them; that said administrator died in 1844, without having made a final settlement of his accounts, and without having paid the complainants' claims; that letters of administration on his estate were granted to his widow, Mrs. Emily Thomas, and to the defendant, Henry F. Sterns; that Mrs. Thomas was only nominally administratrix, while Sterns received all the assets of the estate, and transacted all the business of the administration; that said Sterns also received, as such administrator, about $9,000 of assets belonging to the estate of said Joseph Thomas, which he has kept separate and apart from the assets of said William's estate, and has never legally disposed of; that on the 11th June, 1845, George Stonum was appointed administrator *de bonis non* of said Joseph's estate; that complainants instituted suits against

said Stonum, on account of their demands against said Joseph's estate, and recovered judgments against him, as such administrator, at the fall term of the circuit court of Conecuh, 1847; that said Stonum received no assets belonging to said Joseph's estate, and, for that reason, "no executions on said judgments have or could have issued against him, and said judgments remain wholly unsatisfied;" that said Sterns, as the administrator of William Thomas, had notice of complainants' said demands and judgments, and promised to pay them out of the assets in his hands belonging to the estate of said Joseph, on the production of proof by the complainants, but, on the production of proper proof, failed and refused to pay, &c. The prayer of the bill was, that said Sterns might, on the final hearing of the cause, be decreed to pay to the complainants the judgments recovered by them out of the funds in his hands belonging to the estate of said Joseph Thomas.

The defendant Sterns answered the bill, denying that the complainants' claim was presented to said William Thomas within eighteen months after his appointment as administrator; denying, also, that he had received any assets belonging to the estate of Joseph Thomas, and that he had not legally disposed of all the assets which had come to his hands belonging to the estate of William Thomas; and alleging that, prior to the filing of the bill, he had made a final settlement of his intestate's administration on the estate of Joseph Thomas, and had paid the decrees then rendered against him. Appended to this answer as an exhibit was a transcript of the proceedings of the orphans' court in the matter of the two estates of Joseph and William Thomas, showing that Sterns, as the administrator of William Thomas, made a final settlement of his intestate's administration on the estate of Joseph Thomas on the third Monday in June, 1846, and that decrees were rendered against him in favor of the several distributees of said Joseph's estate.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error.

WATTS, JUDGE & JACKSON, for the appellants.—1. The act of 1845 makes the administrator of a deceased administrator or executor liable to account to the creditors, legatees or distributees of the first intestate or testator, or to his administrator *de bonis non*, to the extent of the assets which come to his hands, belonging to the estate of the first decedent. In other words, to the extent of the assets in his hands, he is the administrator of the estate of the first decedent: he is *quasi* administrator *de bonis non*, and, as such, is required to account to the same extent, and by the same rules which govern executors or administrators.

2. An administrator cannot, in reply to a suit by a creditor, plead that he has settled with the orphans' court, and had the funds distributed among the heirs.—Dean v. Portis, 11 Ala. 104 ; Thrash v. Sumwalt, 5 Ala. 13. Does Sterns occupy a better position than an administrator of Joseph Thomas would ? Independent of the statute of 1845, he would be considered a trustee, holding the funds of Joseph Thomas' estate subject to the rights of the parties therein interested ; that is, creditors first, and distributees afterwards.

3. The complainants' judgments against Stonum, as the administrator *de bonis non* of Joseph Thomas, are conclusive against the estate of said Thomas, and, consequently, must be conclusive against all persons who hold the assets of that estate. There can be no doubt that such judgments would be conclusive against all subsequent administrators of Joseph Thomas. Sterns, so far as the assets in his hands are concerned, stands in the shoes of the estate, and, independent of the act of 1845, is concluded by the judgments as to their validity and amounts. If this be held doubtful, it insisted that the act of 1845, in effect, makes him, *de jure*, an administrator of Joseph Thomas. In the aspect most favorable to him, the statute makes him an ancillary administrator, and liable to account to creditors, legatees, distributees, or to the administrator *de bonis non*. He is bound by any judgment or act which would bind the administrator in chief.—Starke v. Keenan, 5 Ala. 590 ; Mahorner v. Har-

rison, 14 Ala. Rep. 834; 10 Pick. 77; 8 Pick. 476; 11 Mass. 264.

4. The only question which Sterns can make in this suit, is, whether the assets belonging to the estate of Joseph Thomas, which are shown to be in his hands, have been by him legally disposed of and paid as against these complainants. The questions of non-claim, statute of limitations, and payment by Joseph Thomas, and everything else arising before the renditions of the judgments, are concluded by the judgments.

5. Independent of the act of 1845, the administrator of an administrator could not be made to account, at law, for the assets of the first estate; but the creditors or distributees were obliged to resort directly to chancery. 3 Ala. 670. Nor was he responsible to the administrator *de bonis non.*—2 Porter, 550; 11 Ala. 872. The representative of an executor or administrator is liable directly to creditors.—Draughn v. French, 4 Porter, 352, and cases cited from 5 Randolph. Sterns stands in the attitude of a trustee for the creditors of the estate of Joseph Thomas. He holds a fund belonging to that estate, which the creditors cannot reach at law, and to which they are equitably entitled. The source from which the assets were derived cannot affect the question.

6. If the assets had legally gone into the hands of the distributees of the estate of Joseph Thomas, it would have been necessary to make them parties defendants. But, when the bill was filed, the assets were in the hands of Sterns; they have never gone out of his hands; and there is no valid decree requiring him to pay them over to the distributees.—Story's Equity Plead. § 140, note 3; 2 Peters, 377; 1 Johns. Ch. 437; Lawson v. Barker, 1 Bro. C. C.

7. The decree of the orphans' court, in favor of the heirs of Joseph Thomas, is against no one; consequently, it is void, and no execution could have issued on it against Sterns.—Joseph v. Joseph, 5 Ala. 280.

F. S. BLOUNT, *contra.*—1. The judgments recovered by the complainants against George Stonum, as the admin-

istrator *de bonis non* of Joseph Thomas, are not evidence against the personal representatives or heirs of William Thomas. There is no privity between the parties. The law did not require the presentation of the claims against Joseph to the administrator of William Thomas, and such presentation was not sufficient to charge the estate of Joseph in the hands of his administrator. If presented to William in his lifetime as administrator of Joseph, it was the duty of the complainants to have sued him at law, or to have followed up such presentation by attending at the settlements of the administrators before the orphans' court. Courts of equity administer no relief to the careless and negligent.

2. There is no evidence showing that either Sterns or Mrs. Thomas ever had any notice or knowledge of the presentation of the claims to William in his lifetime; nor does the record contain any evidence of their presentation to Sterns and Mrs. Thomas, as administrators of William, before final settlement.

3. The act of 1845 limits the liability of the administrators of administrators, &c., "to the assets that may come into their hands of the first estate." The jurisdiction is conferred on the orphans' court, and to that tribunal the complainants ought to have resorted. The jurisdiction conferred on the orphans' court was exclusive; and the chancery court never entertains jurisdiction, where legislative authority has established a competent tribunal to meet the particular case.

4. The complainants' judgments against Stonum are not evidence to charge the heirs of William Thomas. Darrington v. Borland, 3 Porter, 9; Heydenfeldt v. Towns, 27 Ala. 429.

STONE, J.—We do not, in this case, propose to determine whether, under the pleadings, the defense of nonclaim can be entertained in favor William Thomas, the first administrator. Nor do we, in this case, decide whether Sterns, the administrator of William Thomas, can rely on the failure of complainants to present the claim to him.

As we understand this record, we feel it our duty to consider the case in two aspects. First, whether there is any privity between Stonum and Sterns, so as to make the judgments of complainants against Stonum, evidence of the debts as against Sterns.

In Rogers v. Grannis, 20 Ala. 247, it was held, that a judgment against an administrator in chief was no evidence against the administrator de bonis non, of the justness of the demand. We can perceive no foundation on which to rest a distinction, which, while it denies to a judgment against the administrator in chief all effect as evidence against the administrator de bonis non, will accord to a judgment against the administrator de bonis non the dignity of evidence against the administrator in chief, or his personal representative.

In the case of Wenrick v. McMurdo, 5 Randolph, 51, 55, the court, in speaking of the office and duties of an administrator de bonis non, said: "Between himself and his predecessor there was no privity. His commission gave him power to act, and to represent the testator or intestate, so far (and so far only) as there remained unadministered goods, chattels and credits, which were of the testator or intestate at the time of his death." Speaking of what amounts to an administration, either by the administrator in chief, or the administrator de bonis non, the opinion adds: "Both held in autre droit; and, therefore, neither could dispose by will of the property remaining in specie; but both had the power, while living, of changing, altering, and converting the property; and whatever was thus altered or converted, became their own goods, and descended on their deaths to their own representatives. Such change or conversion of the goods was (so far as regarded the administrator de bonis non) a complete administration, and put them as effectually beyond the reach of his commission, as if they had never belonged to the testator or intestate."—See, also, 1 Lomax on Ex'rs, (2d ed.) 548.

The act of 1845 (Pamph. Acts, 167) empowered the orphans' court, in all cases, to bring the administrator, &c., of a deceased administrator to a settlement; and

declared, that such administrator of an administrator should be "liable to account either with the distributees, legatees, creditors, or administrators *de bonis non*, or executor with the will annexed, of his testator's or intestate's testator or intestate.".

It is manifest, that the act of 1845 contains nothing which creates a privity between the offices of administrator in chief and administrator *de bonis non*, further than its express provisions extend. It nowhere declares, that a judgment against an administrator *de bonis non* shall be evidence of a debt against the administrator in chief; much less, against the administrator of such administrator. We cannot hold, then, that the suit and recovery against Stonum, the administrator *de bonis non*, was so far a proceeding against Sterns, or the effects of Joseph Thomas in his hands, as that he was bound to retain those effects for the payment of the judgments which the complainants might recover in the suits at law. He, Sterns, was liable to account to the legatees and distributees, as well as to and with creditors; and, without going farther at this time, we think it clear that even notice of the existence of those suits against Stonum, without more, neither cast on him the duty, nor armed him with the power, of arresting or preventing the distribution of the effects of the estate of Joseph Thomas in his hands. If the creditors had instituted proceedings against Sterns, possibly the rule would be different.

Second: It may be contended, that inasmuch as the complainants have unproductive judgments against Stonum, as administrator *de bonis non* of Joseph Thomas, deceased, and Sterns had in his hands effects belonging to said estate, this bill may be entertained as a creditors', or garnishment bill, to reach equitable property. A complete answer to this is found in the fact, that long before this bill was filed, Sterns had come to a settlement, and distributed the effects in his hands. It does not vary the case, that the judgments are, as is alleged, informal, in not naming Sterns personally. The amounts were ascertained, and the "administrator of William Thomas, who was administrator of Joseph Thomas," was directed to

pay them. The record shows, that Sterns was the person designated; and under the authority of Smith v. Redus, 9 Ala. 99, such defect is amendable, and will be considered as amended. It is not necessary to go further in this case.

Decree affirmed.