HAYS, EXECUTOR, &c., *vs.* COCKRELL, ADM'R, &c.

[FINAL SETTLEMENT OF ACCOUNTS OF DECEASED ADMINISTRATOR.]

1. *Jurisdiction of probate court to settle administration, where administrator occupies antagonistc positions.*—If an administrator dies without having made final settlement of his accounts and vouchers, and his executor is appointed administrator *de bonis non* of his intestate's estate, the probate court has no jurisdiction to settle with such executor his testator's administration of the intestate's estate; nor can the difficulty be obviated by appointing a special administrator, under the provisions of the act of 1863, (Session Acts, 1863, p. 65,) to represent the intestate's estate : the only remedy is in chancery.

2. *Jurisdiction of probate court to settle husband's trusteeship of wife's statutory separate estate ; husband's right to emblements in wife's separate estate.*—The cases of *Weems v. Bryan and Wife*, (21 Ala. 302,) as to the jurisdiction of the probate court to settle the husband's trusteeship of his wife's statutory separate estate, and as to his right to the proceeds of the crop planted but not gathered at the termination of the coverture, and *Bennett v. Bennett*, (34 Ala. 53,) as to the latter point, both overruled. (WALKER, C. J., *dissenting.*)

3. *When appeal lies.*—An appeal does not lie from a decree of the probate court, which purports to have been rendered on final settlement of the accounts and vouchers of a deceased administrator, and which shows on its face that the court had no jurisdiction to render it; and an appeal from such a decree will be dismissed by the court, *ex mero motu.* (A. J. WALKER, C. J., *dissenting.*)

APPEAL from the Probate Court of Greene.

IN the matter of the estate of Robert A. Hairston, deceased, on final settlement of the accounts and vouchers of Mrs. Mary Hairston, deceased, his widow and administratrix, by Charles Hays, her executor. The material facts of the case, so far as they are necessary to a correct under-

standing of the legal questions here decided, were thus stated in the opinion of the court, as delivered by JUDGE, J.:

"Robert A. Hairston and Mary Hays intermarried, in this State, in the month of July, 1856. After the marriage, Robert A. became possessed of a plantation and personal property, which, under the statute law of this State, constituted the separate estate of Mary, his wife. He managed and controlled this separate estate until the period of his death, which occurred in November, 1864. In December of the same year, the said Mary H., who survived the said Robert A. Hairston, as his widow, administered on his estate, and remained the administratrix thereof until the period of her death, which occurred in February, 1865. In the month of March of the same year, Charles Hays was appointed the administrator *de bonis non* of the estate of the said Robert A.; and in November, 1865, he also qualified as the executor of the last will and testament of the said Mary H. Subsequently, Hays reported the estate of his intestate, Robert A., insolvent; and on the 14th of May, 1866, the estate was duly declared insolvent. Hays, as the executor of the said Mary H., then filed in the probate court an account for the settlement of the administration of the said Mary H. on the estate of the said Robert A., and a day was fixed for the settlement. Hays being the executor of one of the estates, and the administrator *de bonis non* of the other, the court considered him as a party in adverse interest to the estate of Robert A., and appointed Samuel W. Cockrell special administrator of the last named estate, for the 'particular proceeding.'—Session Acts, 1863, p. 65. The creditors of the estate of Robert A., though not parties of record, appeared on the settlement, by counsel, in aid of the special administrator.

"It was held by the probate court on the settlement, that the executor of the wife was chargeable with the income and profits of her statutory separate estate, which accrued from her plantation during the year of the husband's death, and were received by her during her lifetime, on the supposed right of the husband to the same as 'emblements.' It appears that some of the transactions of the said Robert A., as trustee of his wife's separate estate, under the

Code, were attempted to be settled by the probate court. Divers other questions at issue between the parties were decided by the court, and exceptions were reserved on both sides; and by consent, there are cross assignments of error in this court.

"The probate court decreed, 'that Samuel W. Cockrell, special administrator of Robert A. Hairston, deceased, for the benefit of the estate of the said Robert A. Hairston, deceased, and for the use of the said estate, recover of Charles Hays, executor of the said Mary H. Hairston, deceased, the sum of six thousand and thirty-two 82-100 dollars, for which execution may issue, at the proper time, as authorized by law, to be levied of the goods, chattels, lands, and tenements, belonging to the estate of the said Mary H. Hairston, deceased, in the hands of Charles Hays, her executor, unadministered.'"

All the assignments of error, on both sides, relate to the rulings of the court in the allowance or rejection of items of debit or credit in the settlement of the account, and on questions of evidence therewith connected.

W. P. WEBB, MORGAN & JOLLY, and GEO. GOLDTHWAITE, Jr., for the appellant.—1. The probate court had no jurisdiction, under the peculiar facts of the case, to make a settlement of the wife's administration on the estate of her deceased husband. If the decision in the case of *Weems v. Bryan*, (21 Ala. 302,) on this point, be adhered to, the special circumstances of this case are sufficient to take it out of the influence of that decision.

2. The principal question in this case is, whether the wife's executor, in settling her administration on her husband's estate, can be charged with the rents, income, and profits of her statutory separate estate, which accrued during the year of the husband's death. On this question, it is submitted, there could be little doubt or difficulty, but for the case of *Weems v. Bryan, (supra,)* and the subsequent case of *Bennett v. Bennett*, (34 Ala. 53,) in which it was re-affirmed, though with reluctance. Those decisions are directly in the teeth of the statute, and violative of its declared object and purpose. The statute (Code, § 1983)

makes the husband a trustee for life, and declares that the rents, &c., "shall not be subject to the payment of his debts"; while those cases extend his interest beyond his death, and make the rents, &c., in the hands of his administrator, subject, like other assets, to the payment of his debts. It is well settled, that when the objects of a trust are accomplished, the trust is discharged, and the legal (as well as the equitable) title vests in the beneficiary.—*Comby v. McMichael,* 19 Ala. 747; 21 Ala. 458; 30 Ala. 143–52. In the case of the wife's statutory separate estate, the object of the trust is the support and maintenance of the family.—*Boaz v. Boaz,* 36 Ala. 334. The claim of the husband's creditors certainly can not be superior to the rights of the wife. They could assert no claim against the rents and profits in his hands during his life. If they have any claim on the trust estate, for advances made, &c., they can assert it by an appropriate proceeding in equity; while the assets in the hands of the administrator, the estate being insolvent, must be distributed *pro rata* among all the creditors. The case of *Weems v. Bryan,* though re-affirmed in *Bennett v. Bennett,* is at variance with the later cases of *Boaz v. Boaz* and *Patterson v. Flanagan* (37 Ala. 513); and in the case last cited, the court declare an intention not to extend the principle of that decision. The case of *Weems v. Bryan,* it is respectfully submitted, ought to be overruled; and even if it be adhered to as a settled rule of property, or on the doctrine of *stare decisis,* it ought not to be extended to this case.

JAS. B. CLARK, J. G. PIERCE, and W. COLEMAN, *contra.* 1. The jurisdiction of the probate court, to settle the husband's trusteeship of his wife's statutory separate estate, in ordinary cases, is settled by the decision of this court in *Weems v. Bryan,* 21 Ala. 302. So far as the antagonistic positions occupied by the executor presented any difficulty, it was obviated by the appointment of a special administrator, under the provisions of the act of November 27, 1863, which was intended to apply to precisely such cases.

2. The case of *Weems v. Bryan* is conclusive, also, as to the husband's right to *emblements*—that is, to the proceeds

of the crop planted but not gathered at the time of his death. That decision was made more than fifteen years ago. It has been assailed in argument, at the bar of this court; but has been expressly re-affirmed, in at least one case, and recognized and approved by citation in many others.—*Bennett v. Bennett*, 34 Ala. 53; *Whitman v. Abernathy*, 33 Ala. 154; *Rogers v. Boyd*, 33 Ala 181; *Alexander v. Saulsbury*, 37 Ala. 377; *Patterson v. Flanagan*, 37 Ala. 513. It has thus become a settled rule of property, which has received the silent recognition and acquiescence of the legislature. If it had worked any great injustice, or public inconvenience, it is fair to presume that the principle established by it would, ere now, have been changed by statute. Regard for vested rights, and for the stability of judicial decisions, requires that it should be sustained and upheld.

JUDGE, J.—(After stating the facts as above quoted.) The first question we shall consider is this : In the particular aspect of the case, as to parties, and the interests involved, had the probate court jurisdiction to make the settlement?

Prior to the passage of the act of January 27, 1845, the probate court had no jurisdiction to compel the representative of a deceased executor, or administrator, to settle the accounts between the deceased executor, or administrator, and the estate which he represented. The parties whose rights were affected by a *devastavit*, or conversion of the goods of the decedent, by the previous executor, or administrator, were compelled to resort to a court of equity for relief.—*Taliaferro v. Bassett*, 3 Ala. 670 ; *Snedicor v. Carnes*, 8 Ala. 665. To give the probate court jurisdiction of such a settlement, the act of 1845 was passed, which was repealed by the adoption of the Code, but re-enacted, in substance, in 1854.—Acts 1853–'4, p. 24. Whilst a " full and complete" settlement may be made in the probate court in such a case, (which, of course, involves the necessity of a final decree for any balance that may be found against the deceased representative, whose administration is settled,) still, no mode is prescribed by the legislation above cited, for the enforcement of such a decree ; and how it should

be enforced, seems to be a question not yet definitely settled.—*Jenkins v. Gray*, 16 Ala. 100 ; *Gray v. Jenkins*, 24 Ala. 516 ; *Howard's Distributees v. Howard's Adm'rs*, 26 Ala. 682 ; *Thomas v. Sterns*, 33 Ala. 137.

But, however this may be, we are satisfied that, when a case is situated, as to *parties*, like the present, the probate court can render no valid decree against the representative of the deceased representative, for any balance that may be found due on the decedent's administration.   The party making the settlement being the representative of both estates, a decree can not be rendered *in his favor*, as the representative of one estate, *against himself*, as the representative of the other.   The probate court is one of statutory powers and jurisdiction, and we may search in vain for any statute authorizing the rendition of such a decree as this.

The probate court, doubtless, seeing this difficulty in the present case, attempted to obviate it, by entering the decree in favor of Samuel W. Cockrell, as special administrator, for the use and benefit of the estate of Robert A. Hairston It can not be successfully contended that this is a valid decree in favor of the estate named.   The "*estate*," *eo nomine*, is no person in law, and neither is it in fact.   It has been held by this court, that a decree in favor of "the legatees of Philip Joseph," is a nullity.—*Joseph's Adm'r v. Joseph*, 5 Ala. 280.   So, a decree of the orphans' court, in favor of "the personal representatives or legal heirs entitled thereto (when ascertained) of Mildred Dupree, deceased," was held to be void for uncertainty.—*Turner, adm'r, v. Dupree's Adm'r*, 19 Ala. 198.   And so of a decree of the court of probate, against an administrator, in favor of "the legal representative" of a distributee, without naming such representative.—*Kyle v. Mays, use, &c.*, 22 Ala. 673. See, also, *Gilbreath v. Manning*, 24 Ala. 418 ; *Watts' Adm'r v. Watts' Distributees*, 37 Ala. 543.   The decree, as rendered in the present case, is, we think, a nullity ; for, as an administrator *ad litem*, appointed under the act of 1863, the position of Samuel W. Cockrell, as to rights, interests, and duties, was entirely analogous to that of a guardian *ad litem*, in similar cases; and from his position and interest

in regard to the litigation, no valid decree could be rendered in his favor.

It results from what we have said, that the court of chancery alone has the power to effect such a settlement as was attempted in the present case; and the nature and condition of the respective interests involved of the two estates, as well also as their condition in regard to parties representative, present a case peculiarly fitted for equity jurisdiction.

[2.] As we have already remarked, the jurisdiction of the probate court, in the adjustment of the estates of deceased persons, is limited, depending entirely upon legislative grants in its favor.—*Leavens v. Butler*, 8 Porter, 380. Cases sometimes arise, in which trusts are to be established, or executed, and for the establishment or execution of which the probate court is powerless to act. In such cases, the jurisdiction of the court of chancery is exclusive; and such has long been the established doctrine of this court.—*Portis v. Creagh*, 4 Porter, 332; *Leavens v. Butler, supra; Harrison v. Harrison*, 9 Ala. 470; *Billingslea v. Harris*, 17 Ala. 214; *Gerald and Wife v. Bunkley*, 17 Ala. 170.

The case of *Weems, ex'r, v. Bryan and Wife*, (21 Ala. 302,) would seem, from the language employed in the opinion of the court, to subvert this salutary and long established rule, in so far as the settlement of the husband's trusteeship of the wife's statutory separate estate is concerned. But an examination of the facts of that case will show that the question of the execution or settlement of the trust was not legitimately presented. The true question was, whether it was competent to surcharge the inventory of the executor, as to specific assets alleged to be the property of the estate of the testatrix; and this may, in all cases, be done in the probate court, notwithstanding that court has not the power to establish or execute a strict trust. The want of jurisdiction in the court to execute a trust, can not oust it of jurisdiction of such a matter as this, plainly given as it is by the statute.—See remarks of Dargan, C. J., in *Gerald and Wife v. Bunkley*, 17 Ala. 177, 178. See, also, *Wilson v. Knight*, 18 Ala. 129. We hold, therefore, in obedience to a well-established principle,

founded as it is in the soundest reason, that the probate
court has not the jurisdiction to settle the husband's trus-
teeship proper of the wife's statutory separate estate; and
this view is not in conflict with the previous decisions of this
court, to the effect, that on the death of the husband, the
legal as well as the equitable estate in the wife's separate
property vests in her, and that she may maintain an action
at law for the recovery of the *corpus* of the estate.

We might proceed to settle several other questions pre-
sented by the record, which will probably arise again, in
the future litigation between the parties, before the proper
forum; but, on the authority of previous decisions of this
court, the record does not inform us that all the evidence
on which they are based, is set out; and furthermore, the
evidence as to some of the questions may not again be the
same.    We, therefore, decline to consider any of them, with
the exception of one, which does not come within the rea-
son named.    That question is, the influence as authority of
the case of *Weems, ex'r, v. Bryan and Wife*, 21 Ala. 302.
This case is attacked in the argument of counsel, and the
rule established by it, as to the right of the husband to
" *emblements* " of the wife's statutory separate estate, is di-
rectly involved, and must again arise in the litigation; and
we deem it proper to consider it.    If its influence as au-
thority is to cease, the sooner the fact is made known the
better.

Sections one, two, and three, of the act of February 13,
1850, and sections 1982 and 1983 of the Code, are the same,
in effect, in the following respects:  They secure to the wife,
as her separate estate, all property held by her previous to
the marriage, and all property she may become entitled to,
in any manner, after the marriage; they vest in the hus-
band, as trustee of the wife, all the property thus belonging
to the wife, give him the right to control and manage the
same, and exempt him from liability to account with the
wife, her heirs, or legal representatives, for the rents, in-
come, or profits of the estate; but expressly declare, that
such rents, income, and profits, *shall not be subject to the
payment of the debts of the husband.*

Thus stood the law, the act of 1850 being then of force,

when the case of *Weems v. Bryan* was decided. In that case, our predecessors held as follows: "There can be no doubt, but that the husband became tenant for the life of the wife, *(per autre vie,)* of the rents and profits of the wife's estate. The right ' to have and possess, control and manage' her property, during the coverture, without liability to account for rents and profits, makes him so. Like every other tenant for life, he is entitled to emblements, that is, the crop growing or matured, and whether gathered or not gathered, at the termination of the life estate.—Ram on Assets, 188. Not being liable to account to any one for the crop that was grown in the year 1850, under this interpretation of the statute, it follows as a matter of course, that plaintiff in error was not bound to include in his inventory the crops of that year, or their proceeds. The law makes them his own."

Without entering upon the reasons which might readily be given, to show the want of analogy, and the palpable incongruity between an estate, either for a person's own life, or for the life of another, *(per autre vie,)* and the interest which a husband has in the statutory separate estate of his wife, we proceed to the consideration of some of the results legitimately springing from the establishment of the rule as stated; and to show that the rule, to the extent it goes, is in conflict with, and subversive of, both the letter and spirit of the statute under which the decision was made, as well as of the law as it now stands, securing to married women their separate estates.

The rents, income, and profits, of the wife's separate estate, under the statute, are, as we have seen, not subject to the payment of the debts of the husband. If, then, the crops raised on the plantation of the wife, during the year of the husband's death, and by the use of her provisions, stock, plantation utensils, and laborers, go to the administrator of the husband's estate, as "emblements," what is the administrator to do with the proceeds? Being assets of the husband's estate, in his possession to be administered, he must first pay, out of the assets in his hands, the debts of the estate, and then distribute the residue, if any, amongst the distributees. But, if the estate should be insolvent, (as

is the fact in the case before us,) the whole of the proceeds
of the wife's crops, thus made, would, under the rule laid
down in the case under review, be absorbed by the credit-
ors of the husband, directly in the teeth of the prohibition
of the statute ; or else the anomaly, if not absurdity, would
have to be perpetrated, of declaring that property of the
estate, in the hands of the administrator to be administered,
should not be made subject to the debts of the creditors of
the estate, but be divided amongst the distributees.

On the death of the husband, the wife's separate estate
is discharged of all trusts ; and the legal, as well as the
equitable title, vests in her.—*Andrews and Wife v. Hucka-
bee's Adm'r,* 30 Ala. 143. Has the administrator of the
husband the right to take the wife's provisions, stock, plan-
tation utensils, &c., thus the wife's absolute property, and
consume the provisions, and use the other property, in
making and gathering the crop, in order to swell the estate
of the husband ? If so, on what just principle is she thus
to be deprived of her property ? The law recognizes no
such solecism as a right in the wife to the estate, after the
death of the husband, and a right in some one else to use
it as he may please, and enjoy all the advantages of its use.

But it may be said, that the provisions, stock, &c., on
hand at the death of the husband, are not "emblements,"
and that the estate of the husband can be made to account
to the wife for their use and consumption, in making and
gathering the crops. If this be so, of what value is the
liability to account, when the estate of the husband is in-
solvent ? The provisions of the wife may be consumed,
and her stock and other property be deteriorated in value,
if not destroyed, in making and gathering the "emble-
ments ;" the family be left destitute at the end of the year,
and the wife then have turned over to her a barren planta-
tion, denuded of the means of subsistence, and of almost
every thing else necessary to carry on the plantation for
another year ; and all this by naught but judicial legisla-
tion.

The *support of the family* was the primary object intended
to be secured by the statute, in authorizing the husband
to receive the rents, income, and profits of the wife's estate,

without being liable to account therefor, and in placing such rents, income, and profits, beyond the reach of the husband's creditors. A construction which gives to the administrator of the husband, as against the wife, the rents, income, and profits of the estate, accruing subsequent to the husband's death, is violative of the policy, as well as of the plain meaning and intent of the statute.

In *Bennett v. Bennett*, (34 Ala. 53,) the court refrained from expressing an opinion as to the correctness of the decision in *Weems v. Bryan*, but announced an unwillingness to unsettle titles, "probably resting on its principles," by overruling it. The court further said, that they were "the more reconciled to this conclusion, because in the settlement of accounts between the wife and the estate of the husband, where each owned property, and they had worked their property in common, the most embarrassing difficulties would frequently be encountered in separating the one interest from the other" If the decision in *Weems v. Bryan* has become a "rule of property," to any extent, it is a rule in violation of an existing statute ; and we know of no just principle, which requires it to be perpetuated ; on the contrary, sound policy, and a just regard for the legislative will, unite in demanding its destruction. With due deference, we consider the last reason of the court, given in *Bennett v. Bennett*, for reconcilement to the case under review, quite unsatisfactory. The "embarrassing difficulties," which the court considered would frequently be encountered without *Weems v. Bryan*, are not unusual in transactions, growing out of trusts and partnerships, between other persons than husband and wife ; and there is a ready forum provided for their solution and adjustment. Furthermore, the "embarrassing difficulties," created by *Weems v. Bryan*, are more embarrassing, and more numerous, than any which could exist without that case.

In the subsequent case of *Boaz v. Boaz*, (36 Ala. 334,) this court correctly stated one of the main objects of the legislature, in the passage of the act securing to married women their separate property. A. J. WALKER, Chief-Justice, in delivering the opinion of the court in that case, said : " It is a fair inference from these provisions, that the

husband is not vested with a title in his own right, for any space of time, to the wife's separate estate; that the law has permitted him to receive the income, with the purpose that he might, as the head of the family, have the means of maintaining that family, and has made it free from liability to debts, in order that his misfortunes or thriftlessness should not prevent the accomplishment of the purpose." It was further announced in that case, that the law "clearly makes the husband's right subordinate to the great purpose of providing a maintenance for the family." It is impossible to reconcile these and other utterances of the court in that case, with the decision in *Weems v. Bryan.* In principle, the case of *Boaz v. Boaz* overrules the case of *Weems v. Bryan.*—See *Patterson v. Flanagan*, 37 Ala. 513.

The same provisions of the statute creating separate estates in married women, should not be construed one way in one class of cases, and another way in a different class. Judicial harmony, and a proper estimate of the character of our law, require that the construction should be uniform in all cases.

The presumption is, we admit, that a judicial decision, "made upon solemn argument and mature deliberation," is correct. We concede further, that, "if judicial decisions were to be lightly disregarded, the great landmarks of property would be disturbed and unsettled"; and that "when a rule has been once deliberately adopted and declared, it ought not to be disturbed, except for very cogent reasons, and upon clear manifestation of error." But Chancellor Kent, from whom we have quoted above, says further: "I wish not to be understood to press too strongly the doctrine of *stare decisis*, when I recollect that there are more than one thousand cases to be pointed out in the English and American books of reports, which have been overruled, doubted, or limited in their application. It is probable that the records of many of the courts in this country are replete with hasty and crude decisions; and such cases ought to be examined without fear, and revised without reluctance, rather than leave the character of our law impaired, and the beauty and harmony of the system destroyed by the perpetuity of error."—1 Kent, 476.

Under our system of government, there is but one department which can make laws. When a statute is enacted, it is the province of the judiciary to expound and enforce, not to repeal or annul it. The case of *Weems v. Bryan* can not be sustained, in our opinion, without partially annulling the statute which gave it birth ; and the question, therefore, is, whether or not the doctrine of *stare decisis* shall override a statute of the State. We have the profoundest respect for the legal learning and ability of the members of the court who pronounced that decision ; and would not, but for reasons which we consider imperative, disturb it. It should be remembered, however, that at the time the decision was made, the statute it construes was a new one, and for the first time before the court ; that it created a new system, which subverted common-law rules that had existed for ages ; that but little knowledge had then been derived, of the practical workings of this system ; and that the case was argued on but one side, and that the side on which the opinion was delivered. Under these circumstances, it is, perhaps, not surprising, that the court should have decided the case as it did.

For the reasons we have given, as well also as under the influence of the cases of *Boaz v. Boaz* and *Patterson v. Flanagan, supra,* we feel constrained expressly to overrule the case of *Weems, ex'r, v. Bryan and Wife,* (the same having already been overruled in effect, as before stated,) as to the rule established by it herein discussed ; and also the case of *Bennett v. Bennett, (supra,)* the latter case resting entirely upon the authority of the former.

[3.] The final decree rendered in the cause is *void upon its face,* and no execution could have been issued thereon and it might have been vacated by the probate court, on motion. Consequently, no appeal will lie from the decree, and the appeal of Charles Hays must be dismissed at his costs. For the same reason, the appeal of S. W. Cockrell must be dismissed at his costs. The proceeding in the court below must be dismissed, at the cost of Charles Hays. Let a judgment in each case be entered accordingly. As to the correctness of the order dismissing the appeals, see the following authorities : *Joseph's Adm'r v. Joseph,* 5 Ala.

280 ; *Patterson v. The Officers of Court*, 11 Ala. 740 ; also,
30 Ala. 78 ; 32 Ala. 497 ; 25 Ala. 722 ; and *Curtis v. Denson*,
at the January term, 1867.

A. J. WALKER, C. J.—It is perhaps true, that in the
imperfect and incomplete condition in which the act of
27th November, 1863, leaves the definition of the authority
and duties of a special administrator, that a resort to the
chancery court is necessary, when the same person is the
representative of two adversely litigant estates.   On that
question, I should have been willing to have yielded my
prepossessions to the contrary, and consented to the con-
clusion of my brethren, that the court below had no juris-
diction to make the settlement.   But the majority have not
stopped with deciding that there was a want of jurisdiction.
They have decided other questions, as to which I consider
it my duty to express my opinion.

1.  No question of the settlement of the husband's trust
estate, if our former decisions stand, is involved in this
case.   The trust terminated with the husband's death.   The
husband, during the coverture, was entitled to the rents,
income, and profits.   No question as to these accruing dur-
ing the trust arises in the case.   The only question is, what,
after the termination of the trust, belonged to the wife, and
what to the husband's estate.   This is a legal question, de-
terminable in the law forum.   The authorities are plain.
*Dent v. Slough*, in manuscript ; *Kirksey v. Stewart & Lucius*,
38 Ala. 692 ; *Patterson v. Flanagan*, 37 Ala. 513 ; *Canty v.
Sanderford*, 37 Ala. 91 ; *Murphree v. Singleton*, 37 Ala. 412 ;
*Bennett v. Bennett*, 36 Ala. 571 ; *Sessions v. Sessions*, 33 Ala.
522.   The decision in *Andrews v. Huckabee*, (30 Ala. 143,)
so far as it would have tolerated concurrence of jurisdic-
tion in the chancery court, has been overruled in the case
of *Bennett v. Bennett, supra*.   The majority of the court do
not intend to overrule those decisions.   Aside from the dif-
ficulty produced by the antagonistic positions of the two
representative capacities of Charles Hays, there is not the
slightest necessity for a resort to the chancery court, unless
that necessity is produced by the abolition of the rule es-
tablished in *Weems v. Bryan*, (21 Ala. 302.)   If we abolish

that rule, asserting the title of the husband, or his administrator, to the crop grown on the land of the wife's separate estate during the year in which the coverture and trust are terminated by death, as emblements, questions will arise, which a chancery court alone can settle. Where the husband's skill, industry, property, or money, has contributed to the production and gathering of a crop on the wife's land, a division of such crop, by which the husband or his representative may be compensated for such contribution, will become necessary, and such division must be had in chancery.

In my opinion, the case of *Weems v. Bryan* ought not to be overruled. The difficulty in the execution of the married-woman's law, as to the manner in which the rights of the parties in the crop should be adjusted when the trust was terminated after the planting of the crop, was encountered soon after its adoption. That difficulty, productive of great litigation, was solved by the decision in *Weems v. Bryan*, fifteen years ago. No matter whether that rule was consistent with all the provisions of the married-woman's law or not, it met and obviated the difficulty; it defined the rights of the parties with unmistakable clearness, and gave them a form of such simplicity, as to be capable of enforcement, in almost every case, in a court of law. Sweeping away that decision, the court now compels the parties to ascertain and obtain their rights in reference to such crop through the machinery of a chancery court, and leaves them without a rule to guide them. Fixed principles will scarcely be found to guide the court in ascertaining the share of the wife, or her representative, and of the husband, or his representative. Plainness and simplicity give way to obscurity and doubt, and difficult litigation takes the place of easy adjustment. This is my first objection to the overruling of *Weems v. Bryan*.

My next objection is, that a judicious application of the doctrine of "*stare decisis, et non quieta movere*," requires that it should be sustained. It has stood as the law of the State for fifteen years. Its operation reached and affected large numbers of persons, in every part of the State. Re-

7

sults pernicious to the people, or injurious to recognized and accepted rights, would have become the subject of general observation and complaint, and would have provoked corrective legislation. That there has been no attempt, during this long period, to correct such evils, negatives their existence, and demonstrates a legislative acquiescence in the rule. This acquiescence is rendered more obvious and striking by the fact, that the objection to it is its conflict with the enactment of the legislature.

Six or seven years after this decision, it was assailed on the hearing of the case of *Bennett v. Bennett* (34 Ala. 53). This court then met and repelled this assault, in the following language: "The case of *Weems v. Bryan and Wife, supra*, was decided more than six years ago. It lays down a rule for the descent and disposition of property, which, it is reasonable to suppose, has been frequently acted upon. It has thus, doubtless, become a rule of property; and while we forbear to express an opinion as to the correctness of that decision, if the question were *res integra*, we are unwilling to unsettle titles, which probably rest on its principles. We are the more reconciled to this conclusion, because, in the settlement of the accounts between the wife and the estate of the husband, where each owned property, and they had worked their property in common, the most embarrassing difficulties would be encountered in separating the one interest from the other."

In the still later case of *Patterson v. Flanagan*, (37 Ala. 513,) the court, after quoting from *Weems v. Bryan*, and noticing several other decisions, says: "It is not our intention to weaken or overturn any decision heretofore made, bearing on section 1983 of the Code. Those decisions have, doubtless, been acted on, and have become rules of property. But we are not inclined to enlarge the husband's interest in the wife's separate estate."

These quotations show, that this court has decided that the doctrine of *Weems v. Bryan* is a law of property, and has twice distinctly announced that it would not overrule that case, but suffer it to stand as an exposition of the law, according to which the people might act, and shape their transactions without apprehension. Men must be presumed

to have acted in reference to it, and in reference to the assurance of its stability; property has been received, and delivered, and transferred, and liabilities have been incurred in many cases, and by many persons, including executors and administrators, and their sureties. In overturning the doctrine of *Weems v. Bryan*, the court opens the door for strife and litigation, the extent of which we can not estimate, and contributes to produce an apprehension, that no solemnity or repetition of adjudication or judicial assurance merits confidence, or guaranties permanency and stability of principle.

Recognized elements of a case demanding the support of a precedent by the doctrine of *stare decisis*, are, the length of time for which it has stood, the number of times in which it has been declared, legislative acquiescence, its operation as a rule acted upon in the business of the country, and especially, and above all, its constituting a rule of property or becoming a muniment of title to it.—*Nolen v. Palmer*, 24 Ala. 391; *Strickland v. Nance*, 19 Ala. 233; *Hibler v. McCartney*, 31 Ala. 506; *Rawles v. Kennedy*, 23 Ala. 240; *Douglass v. Beasley*, in manuscript; other cases collected in Shepherd's Digest, 574, § 177; Ram on Legal Judgment, m. p. 112, 9 Law Library, 66; Sharswood's Legal Ethics, Introduction, p. xxxiii. A reference to the authorities cited above will, in my judgment, show that the concurrence of every element of a case for the operation of the doctrine of *stare decisis* is presented, and that the overruling of *Weems v. Bryan* is a departure from established principle.

The court, however, not only overrules the decision in *Weems v. Bryan*, but, in overruling that, it also overrules the decisions in *Bennett v. Bennett* and *Patterson v. Flanagan*. It overrules the two latter, not only when regarded as asserting the same principle with the former, but it overrules the decision of those two cases, that *Weems v. Bryan* was protected by the doctrine of *stare decisis*. The very point of controversy, whether *Weems v. Bryan* could be questioned as an authority, was expressly adjudged in *Bennett v. Bennett*, and passed upon, in a *dictum*, in *Patterson v. Flanagan*.

The ruling on that point, in those two cases, is also subverted along with the doctrine in *Weems v. Bryan.*

While I regard *Weems v. Bryan* as asserting a convenient rule in reference to one branch of the married-woman's law, I do not defend it on principle. I think it inconsistent with the legislative intention. The error of a precedent is, however, not necessarily a reason for withholding from it the shield of *stare decisis.* That doctrine was made to support decisions deemed wrong. Correct decisions, or those deemed correct, can stand without it. Fealty to that conservative doctrine is evinced only in upholding precedents which are considered wrong. It exacts, in appropriate cases, a surrender of judgment to predecessors, and to the necessity of repose, of stability in the system of laws, and of public confidence in judicial precedents.

What I have written has not been for the purpose of vindicating *Weems v. Bryan,* nor for the purpose of weakening the influence of the decision of the court in this case, or preventing its acceptance and adoption as the law, so far as it asserts a doctrine in conflict with that announced in the case overruled. The decision of the court in this case being made, it will probably increase the confusion to subject it to question, and it will probably be better that it should be regarded as permanent.

I admit that the view of the statute which guided this court in *Boaz v. Boaz,* and *Patterson v. Flanagan,* is not that which prevailed in the decision of *Weems v. Bryan.* But the case last named could have been upheld, as a rule of property, without colliding with the two former cases. The rule of *stare decisis* does not require that a wrong decision should govern in every case, in which the principle underlying it might arise. Consistently with the maxim, the operation of such a decision may be confined within the area of those cases in which it has been acted upon as a precedent, and governs the titles to property. Such an operation this court indicated its intention to allow the precedent in question, when it decided *Bennett v. Bennett* and *Patterson v. Flanagan.* My purpose is to contribute what I can to sustain the doctrine of *stare decisis,* and to prevent the decision of the court in this case from becom-

ing a precedent for the easy overthrow of that doctrine hereafter.

I think the order of the court dismissing the appeals is wrong, even if the opinion of the court were correct.